532 A.2d 183

**Thomas E. PEDERSEN, Jr., et ux.**

**v.**

**REPUBLIC INSURANCE COMPANY, et al.**

No. 147, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Nov. 5, 1987.

Francis John Gorman (Moore, Carney & Ryan and Joseph Pokorny, on the brief), Towson, for appellants.

Victor I. Weiner (Leonard L. Lipschultz and Lipshultz and Hone, Chartered, on the brief), Silver Spring, for appellee, Republic Ins. Co.

Andre R. Weitzman, on the brief, Baltimore, for appellee, Eugene Miller.

Argued before GILBERT, C.J., and GARRITY and POLLITT, JJ.

POLLITT, Judge.

This is an appeal from a declaratory judgment determining that a homeowner's policy of insurance issued by Re-

public Insurance Company, appellee, to Thomas E. Pedersen, Jr., and Joan C. Pedersen, appellants, did not provide coverage for claims made against the Pedersens by Eugene Miller, Jr., based on an alleged negligent entrustment of an automobile by the Pedersens to their son, Thomas E. Pedersen, III.

Republic insured the Pedersens under a standard homeowner's policy which provided coverage for, among other things, personal liability and medical payments to others. Included within the definition of "insured" were relatives residing in the Pedersen household. The policy provided:

## SECTION II—EXCLUSIONS:

1. Coverage E—Personal Liability and Coverage F— Medical Payments to Others do not apply to bodily injury or property damage:

 \* \* \* \* \* \*

 e. arising out of the ownership, maintenance, use, loading or unloading of:

 \* \* \* \* \* \*

 (2) a motor vehicle owned or operated by, or rented or loaned to any insured....

Eugene P. Miller, Jr., sued appellants in the Circuit Court for Baltimore County. He alleged that the Pedersens had negligently entrusted the use of a vehicle to their son when they knew or should have known that such use would likely cause injury to others. He further alleged the son operated that vehicle in a negligent manner, causing serious injuries to Miller, a passenger in the vehicle. He sought damages of one million dollars.

Mr. and Mrs. Pedersen then filed this action, seeking a declaration from the court that Republic was obligated to defend the action brought against them by Miller and to provide coverage for any liability found to exist. The trial court (Hennegan, J.) found no potentiality that the claim could be covered by the policy and granted summary judg-

ment in favor of Republic. The Pedersens appealed. We shall affirm.

> The obligation of an insurer to defend its insured under a contract provision such as here involved is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. [citations omitted] Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy.

*Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407–08, 347 A.2d 842, 850 (1975), *rev'g* 23 Md.App. 186, 326 A.2d 758 (1974) (emphasis in original). *See also Ed. Winkler & Son v. Ohio Cas. Ins.*, 51 Md.App. 190, 441 A.2d 1129 (1982). Thus, we must examine the facts as alleged in the underlying tort action.

Miller alleged that Thomas E. Pedersen, III, the son of appellants, was not a licensed driver, the privilege having been denied him by the State of Maryland due to repeated violations of the motor vehicle laws, and "the unsafe and reckless manner in which he operated a motor vehicle, causing many serious collisions and inflicting serious personal injury on blameless vehicle operators and passengers." He further alleged that appellants, despite their knowledge of such facts, and in breach of their duty to refrain from entrusting a vehicle to a careless, reckless, unfit and unsafe driver, "did entrust to and facilitated the use of" a vehicle by the son. He alleged the Pedersens entrusted the vehicle to their son by selling it to their daughter, "whom they knew would in turn permit the son to use [it] at his pleasure." Title to the vehicle remained in the father. After alleging his injury due to the negligent operation of the vehicle, he alleged, as previously noted, that the Pedersens knew or should have known the use of the vehicle by the son would likely cause unreasonable risk of harm to others.

Although not specifically alleged in the tort action, facts developed in the instant case showed that the son had accumulated 40 points assessed against his driver's license.[1] Although an adult, the son resided with his parents. As a condition of his residence with them, the parents required that the son turn over his car keys to them and refrain from driving. While the parents were vacationing in Ocean City, the son obtained the keys and drove the vehicle, negligently causing the accident in which Miller was injured. As previously mentioned, title to the vehicle remained in the name of the father. He had sold the car to his daughter who had, in turn, sold it to her brother. The daughter carried liability insurance on the car with The Ohio Casualty Company. Ohio Casualty had settled Miller's claim against the son for $50,000 and obtained a joint tort-feasor release.

■ Because the Maryland appellate courts have not previously addressed the question of whether an action for negligent entrustment falls within the exclusionary language of the homeowner's policy, appellants assert there was, at least, a *potentiality* of coverage. They further posit the language of the policy "must be ambiguous or there would not be such a split among jurisdictions" which have decided the question. As did the trial court, we disagree. Relying on *Kahlenberg v. Goldstein*, 290 Md. 477, 431 A.2d 76 (1981), Judge Hennegan found the "tort of negligent entrustment involves concurrent causation," and, therefore, the injuries sustained by Miller "arose out of the use of a motor vehicle operated by an insured." Thus, he reasoned there was no potentiality that the claim could be covered by the policy.

In *Kahlenberg*, the Court of Appeals said:

[T]he tort of negligent entrustment involves *concurrent causation*. The negligence of the supplier consists of furnishing the chattel with the requisite knowledge. This

---

1. The briefs say his license was "suspended," but we strongly suspect it was revoked. *See* Maryland Code (1977, 1987 Repl. Vol.) § 16–404(a)(3)(ii) of the Maryland Transportation Article.

sets in motion one chain of causation which may or may not in fact result in injury. The other chain of causation involves the conduct of the immediate tortfeasor. If physical harm results to one within the class of foreseeable plaintiffs, as a result of the use of the chattel by the entrustee in a manner, which, because of the youth, inexperience or otherwise of the entrustee, the supplier knew or had reason to know was a likely use and which would involve an unreasonable risk of physical harm, *the two chains of causation converge* and liability is imposed on the supplier, for his own negligence. [emphasis supplied]

*Kahlenberg, supra,* 290 Md. at 489–90, 431 A.2d at 83–84.

In *Rispoli v. Jackson,* 51 Md.App. 606, 445 A.2d 349, *cert. denied,* 294 Md. 142 (1982), we dismissed an appeal concerning a negligent entrustment count when appellant had accepted the benefit of a judgment in his favor on a negligence count. We said:

While the counts may represent different causes of action, they are not separate and distinct because they involve precisely the same accident, the same injuries and the same principal.

*Rispoli, supra,* 51 Md.App. at 611, 445 A.2d at 351.

We also do not find "such a split among jurisdictions" which have decided the question as appellants would have us believe. At least 25 jurisdictions have held the policy exclusion in question applicable to claims of negligent entrustment.[2] Assuming some disagreement among various

---

**2.** *See Rubins Contractors, Inc. v. Lumbermens Mut. Ins.,* 821 F.2d 671 (D.C.Cir.1987) (predicting Maryland law); *Allstate Ins. Co. v. Ellison,* 757 F.2d 1042 (9th Cir.1985) (aircraft) (predicting Alaska law); *Southeastern Fire Ins. Co. v. Heard,* 626 F.Supp. 476 (N.D.Ga.1985) (predicting Georgia law); *Cooter v. State Farm Fire and Cas. Co.,* 344 So.2d 496 (Ala.1977); *Lumbermens Mut. Cas. Co. v. Kosies,* 124 Ariz. 136, 602 P.2d 517 (1979); *Aetna Cas. & Sur. Co. v. Am. Mfrs. Mut. Ins. Co.,* 261 Ark. 326, 547 S.W.2d 757 (1977); *Safeco Ins. Co. v. Gilstrap,* 141 Cal.App.3d 524, 190 Cal.Rptr. 425 (1983); *Ins. Co. of North America v. Waterhouse,* 424 A.2d 675 (Del.Super.Ct.1980); *Gargano v. Liberty Mut. Ins. Co.,* 384 So.2d 220 (Fla.Dist.Ct.App.1980); *Grange Mut. Cas.*

courts, such disagreement does not suggest the terms of the policy are ambiguous. Appellants suggest no specific ambiguities, and we find no ambiguities in the clause in question. "[T]he fact '[t]hat a term cannot be precisely defined so as to make clear its application in all varying factual situations does not mean that it is ambiguous.'" *Winterwerp v. Allstate Ins. Co.*, 277 Md. 714, 718, 357 A.2d 350, 353 (1976) (*quoting Allstate v. Humphrey*, 246 Md. 492, 229 A.2d 70 (1967)). Maryland adheres to the rule "that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole." *Penn., Etc., Ins. Co. v. Shirer*, 224 Md. 530, 536, 168 A.2d 525, 528 (1961). In interpreting insurance contracts, words are to be given their customary and normal meaning. Absent ambiguity, construction of the contract is within the province of the court and Maryland has not adopted the rule that an insurance policy is to be most strongly construed against the insurer. *Gov't Employees Insur. v. DeJames*, 256 Md. 717, 261 A.2d 747 (1970).

---

*Co. v. King,* 174 Ga.App. 716, 331 S.E.2d 41 (1985); *Hawaiian Ins. & Guar. Co. v. Chief Clerk,* 713 P.2d 427 (Hawaii 1986); *State Farm Fire and Cas. Co. v. McGlawn,* 84 Ill.App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (1980); *Thomas v. Estate of Grunsten,* 492 So.2d 201 (La.Ct.App. 1986); *American Universal Ins. Co. v. Cummings,* 475 A.2d 1136 (Me.1984); *Barnstable County Mut. Fire Ins. Co. v. Lally,* 374 Mass. 602, 373 N.E.2d 966 (1978); *Michigan Mut. Ins. Co. v. Sunstrum,* 111 Mich.App. 98, 315 N.W.2d 154 (1981); *Fillmore v. Iowa Nat. Mut. Ins. Co.,* 344 N.W.2d 875 (Minn.App.1984); *Shelter Mut. Ins. Co. v. Politte,* 663 S.W.2d 777 (Mo.Ct.App.1983); *Senteney v. Fire Ins. Exchange,* 101 Nev. 654, 707 P.2d 1149 (1985); *Hanover Ins. Co. v. Grondin,* 119 N.H. 394, 402 A.2d 174 (1979) (boat); *Williamson v. Continental Cas. Co.,* 201 N.J.Super. 95, 492 A.2d 1028 (1985); *Ruggerio v. Aetna Life & Casualty Co.,* 107 A.D.2d 744, 484 N.Y.S.2d 106 (1985); *Potosky v. Fejes,* 23 Ohio Misc.2d 45, 492 N.E.2d 494 (1986); *Farmers Insurance Group v. Nelsen,* 78 Or.App. 213, 715 P.2d 492 (1986); *Erie Ins. Exchange v. Transamerica Ins. Co.,* 352 Pa.Super. 78, 507 A.2d 389 (1986); *Great Central Ins. Co. v. Roemmich,* 291 N.W.2d 772 (S.D. 1980); *Fidelity & Guar. Ins. Underwriters v. McManus,* 633 S.W.2d 787 (Tex.1982); *Farmers Ins. Group v. Johnson,* 43 Wash.App. 39, 715 P.2d 144 (1986) (boat); *Bankert v. Threshermen's Mut. Ins. Co.,* 110 Wis.2d 469, 329 N.W.2d 150 (1983); *Mutual Service Cas. Ins. Co. v. Koenigs,* 110 Wis.2d 522, 329 N.W.2d 157 (Wis.1983).

Giving the words in the exclusionary clause their customary and normal meaning, we have no difficulty in concluding that Miller's claim against the Pedersens arose out of the use of a motor vehicle owned or operated by an insured.

Courts in other jurisdictions which have addressed this issue, under similar factual situations with identically worded policy exclusions, have emphasized the underlying negligence of the entrustee in holding the exclusion relieves the insurer from providing coverage and a defense.

The Superior Court of Delaware, in *Ins. Co. of North America v. Waterhouse*, 424 A.2d 675 (Del.Super.Ct.1980), said:

> Admittedly, the tort of negligent entrustment involves conduct which, in part, is distinct from the operation of the instrumentality which inflicts the harm. It is the negligent entrusting which creates the unreasonable risk, although the magnitude of the harm may depend upon the dangerous character of the product entrusted. See, *Prosser*, Law of Torts (4th Ed.) p. 678. It is not difficult to envision situations in which the type of instrumentality entrusted, (e.g., a gun or explosives), squares with the insurer's obligation to defend claims asserted against a parent-entrustor under a policy of general liability. But where the parties to a policy of general risk insurance agree to the specific exclusion of an instrumentality which, in operation and usage, is the predominant source of public liability claims, the focus changes. Regardless of when and where the judgment is made to entrust the automobile, the essential triggering element giving rise to the tort is the use of the chosen instrumentality—the automobile. It is this use which is specifically proscribed and, in the normal expectation of the parties to the insuring agreement, separately insured. While it is laudable to attempt an expansive reading of the policy in an effort to provide the insured with maximum coverage, the

clear language of the exclusion cannot be tortured to achieve that result.

*Waterhouse, supra,* 424 A.2d at 682.

This is known as the "instrumentality" theory and is one of two justifications for applying the exclusion to negligent entrustment of automobiles. The instrumentality theory was enunciated and applied by the Supreme Court of Alabama in *Cooter v. State Farm Fire & Cas. Co.,* 344 So.2d 496 (Ala.1977), to support the holding that the exclusion was unambiguous and applicable to negligent entrustment. There, the Alabama court reasoned:

> While the rationale of "negligent entrustment" is not founded upon negligence of the driver of an automobile, but upon the primary negligence of the entruster for supplying an automobile to an incompetent driver, the manifestation of the incompetence of the user is an essential element to the gravamen of the negligent entrustment action. That is to say, but for the incompetent driver's misconduct in the use of the automobile, no liability could result to the entrustor....
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> While liability (apart from coverage) for negligent entrustment is not conditioned upon the entrustor's ownership or use of the vehicle, negligent use by the one to whom it is entrusted is essential to recovery. It is the concurrence of these dual elements—negligent entrustment by the owner or custodian of the instrumentality plus its negligent use by the entrustee—that is missing in the rationale of those cases upholding coverage. Taken literally, this line of reasoning—that negligent entrustment of the vehicle, and not its use, is the basis of insured's alleged liability—the injured party could recover absent any showing that the incompetent to whom the vehicle is entrusted caused the injury by his negligent use of the vehicle. As we have already observed, this does not comport with the elements that make up this tort concept of negligent entrustment.

*Cooter, supra,* 344 So.2d at 497–99. Other courts have relied on the instrumentality approach in finding the exclusion applies. As stated in *Southeastern Fire Ins. Co. v. Heard,* 626 F.Supp. 476, 480 (N.D.Ga.1985) (predicting Georgia law):

The most well reasoned and convincing rationale for exclusion of negligent entrustment is an analysis of the tort itself. Negligent entrustment is composed both of the entrustor's negligence in entrusting the instrumentality *and* the entrustee's negligent use of the instrumentality. Thus, the triggering element is negligent use of the item, for even if the entrustment was negligent, no cause of action could arise without an injury caused by negligent use of the item. Because negligent use is essential, negligent entrustment arises out of the use of a certain instrumentality. Thus, the exclusion applies. This construction is true to the exclusion's plain meaning. [emphasis in original]

The second theory relied upon to support the finding that negligent entrustment of automobiles is excluded from coverage is known as the "dovetail" theory.

This theory simply holds that any one occurrence can only be covered by either the automobile or the homeowner's policy—but not both. That mutually exclusive effect is the result of the exclusionary clause of the homeowner's policy acting as the mirror image of the inclusionary clause of the automobile policy. The two coverages dovetail, the one filling the gaps created by the other. Automobile-related occurrences are then within the sole province of the automobile policy.

*Erie Ins. Exchange v. Transamerica Ins. Co.,* 352 Pa.Super. 78, 88, 507 A.2d 389, 394 (1986).

The underlying rationale of the "dovetail" theory rests upon the principle "that the insured must look to the basic protection provided by the specific insuring agreement designed to cope with the risk inherent in automobile operation, with homeowner's protection available only to cover all

other general or unspecified risks." *Waterhouse, supra,* 424 A.2d at 680. As the Delaware court there stated:

A homeowner's policy is a personal comprehensive liability policy which is designed to protect against risks which are home-oriented. It is comparatively low in cost and intended to insure against non-business and non-automobile risks. Appleman, *Insurance Law and Practice* (Berdel ed.), § 4501.–02. The coverage extended through a homeowner's policy is intended to be comprehensive because the risks involved tend to be general. The public liability features of such policies are usually engrafted upon, and are incidental to, basic property protection against fire and casualty losses. While the contemplation of the parties to a preprinted contract of insurance is a nebulous concept and one usually invoked after a claim has arisen, it is a reasonable assumption that a purchaser of homeowner's insurance does not obtain such insurance to protect him from the ordinary risks inherent in the ownership or operation of an automobile. This is particularly true where, as here, the insured has separately purchased substantial automobile liability coverage. Certainly, the insurer in the setting of its rates and in the selection of explicit exclusion language in its policy did not thereby intend to subject itself to protecting the insured from claims arising out of the operation of an automobile by the insured and members of his household.

*Waterhouse, supra,* 424 A.2d at 682.

There are a few cases holding to the contrary.[3] Many of those few are clearly distinguishable.

---

3. *See, e.g., Douglass v. Hartford Ins. Co.,* 602 F.2d 934 (10th Cir.1979) (applying Colorado law); *United Fire & Casualty Co. v. Day,* 657 P.2d 981 (Colo.Ct.App.1982); *Upland Mut. Ins., Inc. v. Noel,* 214 Kan. 145, 519 P.2d 737 (1974); *Republic Vanguard Insurance Co. v. Buehl,* 295 Mn. 327, 204 N.W.2d 426 (1973); *McDonald v. Home Ins. Co.,* 97 N.J.Super. 501, 235 A.2d 480 (1967); *Heritage Mut. Ins. Co. v. Hunter,* 63 A.D.2d 200, 406 N.Y.S.2d 625 (1978); *Government Emp. Insur. Co. v. Chahalis,* 72 Misc.2d 207, 338 N.Y.S.2d 348 (1972).

*Republic Vanguard Insurance Co. v. Buehl*, 295 Minn. 327, 204 N.W.2d 426 (1973), cited by appellants, is one such case. The exclusion in the policy in that case provided the policy did not apply to the *use* of automobiles. Thereafter insurers broadened the language of the exclusion to exclude coverage for injuries *arising out of the use* of automobiles. This distinction was recognized by the Minnesota Supreme Court in *Faber v. Roelofs*, 311 Minn. 428, 250 N.W.2d 817 (1977). *See also Fillmore v. Iowa Nat. Mut. Ins. Co.*, 344 N.W.2d 875 (Minn.App.1984). Minnesota has thus joined the vast majority of the states applying the exclusion.

The same is true as to the New York cases cited by appellants. In both *Heritage Mut. Ins. Co. v. Hunter*, 63 A.D.2d 200, 406 N.Y.S.2d 625 (1978), and *Government Emp. Insur. Co. v. Chahalis*, 72 Misc.2d 207, 338 N.Y.S.2d 348 (1972), the policies in question did not apply to "the ownership, maintenance, operation, *use*," etc. of automobiles. The New York courts said the claims for negligent entrustment were not *directly* related to the "use" of the automobile and the exclusion did not apply. However, in *Ruggerio v. Aetna Life & Casualty Co.*, 107 A.D.2d 744, 484 N.Y.S.2d 106 (1985), the court said the standard exclusion for liability *arising out of* the use of an automobile did apply to a suit for negligent entrustment because no harm was done until the entrustee negligently drove the vehicle.

In *Rubins Contractors, Inc. v. Lumbermens Mut. Ins.*, 821 F.2d 671, 677 (D.C.Cir.1987), the Court said:

> Maryland has yet to take a position on this issue, but we believe that it would adopt the majority view and find the ... policy inapplicable. As noted above, Maryland has rejected the policy of construing insurance policies "most strongly against the insurer" in favor of "the rule that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole." ... Maryland has stressed the public interest in the "prompt and reasonable settlement of lawsuits" and in averting "increased insurance and litigation costs." ... We believe that these concerns would lead it to avoid the sort of

strained construction of insurance contracts that would be necessary to find coverage under the policy.

We agree. We hold that a claim for negligent entrustment of an automobile is excluded from coverage under a policy of homeowner's insurance which excludes claims arising out of the ownership or use of a motor vehicle.

JUDGMENT AFFIRMED;

APPELLANTS TO PAY COSTS.