559 A.2d 385

**Linda McCLOSKEY**

v.

**REPUBLIC INSURANCE COMPANY**

**No. 1341, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

June 29, 1989.
Certiorari Denied Nov. 27, 1989.

Daniel W. O'Connell (Donovan & O'Connell, on the brief), Silver Spring, for appellant.

William N. Zifchak (Sasscer, Clagett, Channing & Bucher, on the brief), Upper Marlboro, for appellee.

Argued before KARWACKI, WENNER and POLLITT, JJ.

POLLITT, Judge.

Michelle Ann Vermillion, the 15-month-old daughter of appellant, Linda McCloskey, was fatally injured while in the care of Edna Marie Sandrus. Ms. McCloskey filed a wrong-ful death action against Ms. Sandrus, alleging that the child's death was caused by the negligence of Ms. Sandrus in failing to discharge her duties "as a paid babysitter for Michelle Ann Vermillion in a prudent and reasonable man-ner."

At the time of the occurrence, Ms. Sandrus was insured under a policy of homeowner's insurance issued by appellee, Republic Insurance Company, which provided coverage for liability for damages due to bodily injury. Under Section II—Exclusions, the policy provided:

**1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

\* \* \* \* \* \*

b. arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**.

This exclusion does not apply to:

(1) activities which are ordinarily incident to non-**business** pursuits....

Declarations in the policy stated that "no business pursuits are conducted on the residence premises." Under the heading of "**DEFINITIONS**" appears, " '**business**' includes trade, profession or occupation."

In response to Sandrus' request for a defense and indemnification in the tort case, Republic filed a declaratory judgment action seeking a declaration that the occurrence arose out of a business pursuit, and, therefore, that Republic had no obligation either to defend Sandrus in the tort action or to indemnify her for any judgment obtained therein.

McCloskey's motion to intervene in the declaratory judgment action was granted. Pursuant to an agreed "Statement of Material Facts Not In Dispute," cross-motions of McCloskey and Republic for summary judgment were submitted to the court. The Circuit Court for Prince George's County (Casula, J.) granted the motion of Republic, and McCloskey appealed, presenting two questions for our review.

I. Whether the trial court erred in construing Republic Insurance Company's policy so as to deny coverage for the alleged tortious conduct of its insured, where the facts established that the "business pursuits" exclusion, relied upon by Republic, does not apply?

II. Whether the trial court erred in granting summary judgment in favor of Republic Insurance Company,

where a dispute of fact exists regarding the specific tortious conduct in question?

We shall affirm the judgment of the circuit court.

### Facts

We glean from the "Statement of Material Facts Not In Dispute" that in April of 1985, Ms. Sandrus was providing child care services at the insured premises for seven children, none of whom were neighbors and only one of whom was related to her by blood or marriage. Three of the seven children—Michelle Vermillion, Michelle Standish and Lyndon Coleman—were under two years of age, as was one of Ms. Sandrus' own children, Joey.[1] The other four children ranged in age from 33 months to 9 years. All seven were cared for from Monday through Friday. The five who were 4 years old or younger were cared for all day, and the older two (aged 6 and 9) for two to three hours after school. For these services, Ms. Sandrus received weekly compensation of from $25 to $40 per child, her total weekly compensation being $195.

Michelle Vermillion was fatally injured during the early afternoon hours of 4 April 1985, while at the Sandrus residence. The precise circumstances surrounding those fatal injuries is in dispute between the parties in the pending tort case.[2] The gravamen of that action, however, is an alleged negligent failure on the part of Ms. Sandrus properly to supervise and care for appellant's decedent. Further facts will be furnished where necessary.

---

1. A family day care home, with certain exceptions not here applicable, may not operate unless it is registered with the Department of Human Resources. Maryland Code (1984, 1988 Cum.Supp.), § 5–552 of the Family Law Article. A day care provider, at any given time, may not care for more than 2 children under the age of 2 years, or more than 6 children, of whom no more than 2 may be under the age of 2 years. A day care provider's own children under the age of 2 years shall be counted as children served. *See* § 5–553. Ms. Sandrus was not registered with the Department.

2. This is the basis of appellant's second argument. As we shall see, however, the resolution of that question is not material to this litigation.

I

Appellant contends the term "business pursuits" is " 'general' and reasonably subject to two interpretations," and concludes that any ambiguity should be resolved "against the drafter of the policy and in favor of coverage." She maintains that "[h]ome day care could have been specifically excluded" from the policy but was not; consequently, the exclusion should be "construed most strongly against the insurer and in favor of coverage." Maryland consistently has rejected the rule that an insurance policy always must be construed most strongly against the insurer. *Truck Ins. Exch. v. Marks Rentals*, 288 Md. 428, 418 A.2d 1187 (1980); *Gov't Employees Insur. v. DeJames*, 256 Md. 717, 261 A.2d 747 (1970); *Pedersen v. Republic Ins. Co.*, 72 Md.App. 661, 532 A.2d 183 (1987).

> Nevertheless, it is a sound principle of contract construction that where one party is responsible for the drafting of an instrument, absent evidence indicating the intention of the parties, any *ambiguity* will be resolved against that party. [emphasis added]

*Truck Ins. Exch., supra*, 288 Md. at 435, 418 A.2d at 1191.

■ Appellant asserts that the exclusionary language in the policy, and the exception thereto, "has been criticized by almost every Court that has had an occasion to review it, and with good reason. It is a model of muddled writing." She posits, therefore, that it must be ambiguous. We disagree. It is true, as we shall see, that the same language has been interpreted in various ways by different courts, but such disagreement does not necessarily suggest ambiguity. *See Pedersen, supra.* The intention of the parties must be ascertained if reasonably possible from the policy as a whole and words are to be given their customary and normal meaning. *Pedersen, supra.* Applying this test, we perceive no ambiguity in the terms of the subject policy.

In *Zurich Insur. Co. v. Friedlander*, 261 Md. 612, 276 A.2d 658 (1971), Chief Judge Hammond for the Court dis-

cussed the meaning of the words "business pursuit" in the context of an exclusionary clause. There a "Credit Card and Depositors Forgery Coverage Endorsement" given in a homeowner's policy was at issue. The coverage provided by the endorsement was limited by a clause which excluded

> any loss arising out of the issuance of any checks, the acceptance of any counterfeit money or the misappropriation of any credit card in the course of the prosecution of the business, occupational or commercial pursuits of the Insured....

*Zurich Insur. Co., supra,* 261 Md. at 613–14, 276 A.2d at 658. The Court's decision involved whether the forged checks occasioning the loss were drawn in the prosecution of the business, occupational or commercial pursuit of the insured. The court stated:

> The broad definition of "business" is ... "That which occupies the time, attention and labor of men for the purpose of a livelihood or profit."

*Zurich Insur. Co., supra* 261 Md. at 616, 276 A.2d at 660 (*quoting Flint v. Stone Tracy Co.,* 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389 (1911)). The Court found, based on this definition, that anyone who spent enough time and attention with investing could be said to be in the "business" of investing. The Court continued, however:

> [T]his broad meaning of the word business is not the meaning the word ordinarily and customarily conveys. The ordinary and customary meaning is ... "commercial or mercantile activity customarily engaged in as a means of livelihood" or two definitions given by Funk and Wagnall's New Standard Dictionary of the English Language:
>
>> "1. A pursuit or occupation that employs or requires energy, time or thought; trade, profession, calling. 2. Any occupation connected with the operations and details of trade or industry,"
>
> or, one given by Black's Law Dictionary (3rd ed.):
>
>> "'Business' is often synonymous with calling, occupation or trade." [emphasis added]

*Zurich Insur. Co., supra* 261 Md. at 616, 276 A.2d at 660. The Court held that the mere ownership of investments does not constitute a business, but, if one actively manages or operates, or participates in the management or operation, then one may be engaged in a business.

■ From the undisputed facts in this case, giving the words of the policy their customary and normal meaning, we have no difficulty in holding that the day care service operated by Ms. Sandrus was a "business pursuit."

As we have noted previously (n. 1) Ms. Sandrus was not registered with the Department of Human Services as a family day care home. McCloskey posits, therefore, that "if a State regulatory scheme requires registration and/or licensing as a prerequisite to doing 'business' in a given field, the absence of such an official imprimatur should be considered in determining whether the endeavor should be recognized as a business." Such convoluted reasoning is not persuasive. It is the same as asserting that an unlicensed operator of a motor vehicle could not be convicted of operating a vehicle without a license because the absence of a license means he is not operating the vehicle. The argument is absurd.[3]

Sandrus was actively engaged in an occupational pursuit requiring the devotion of her energy, time and thought, and for which she received compensation. Unquestionably, it

---

**3.** Had Ms. Sandrus been registered, as she should have been, this situation *may* never have arisen. Maryland Code (1957, 1986 Repl. Vol., 1988 Cum.Supp.), Art. 48A, § 481D(a) provides that:

Any insurer that issues or delivers a policy or contract of homeowner's liability insurance in Maryland shall offer, to any policyholder who is registered under Part V of Title 5, Subtitle 5 of the Family Law Article as a family day care home provider the option of purchasing coverage for liability as a result of bodily injury, property damage, or personal injury arising out of the insured's activities as a family day care provider in an amount not less than $300,000.

We express no opinion as to the effect of this section on cases of this nature *had* Sandrus been registered as required by law, but see *Libby v. Government Employees Insurance Co.,* 79 Md.App. 717, 558 A.2d 1236 (1989).

was a "business pursuit" as defined by the Court of Appeals in *Zurich Insur. Co., supra.*

Appellant argues, however, that the exception to the exclusion is applicable. This exception provides that the "business pursuit" exclusion does not apply to "activities which are ordinarily incident to nonbusiness pursuits." McCloskey contends that "activities which might be construed as having 'arisen out of business pursuits' will nonetheless qualify for coverage if they are *'ordinarily* incident to nonbusiness pursuits.'" Appellant argues:

> Edna Sandrus' babysitting was an activity which was ordinarily incident to the nonbusiness pursuit of running her household and caring for her own children. She was a housewife who while she cooked, cleaned, and did laundry, looked after her own children and at the same time looked after the children of neighbors and relatives. She did not devote her whole time and attention to the children she baby-sat, as she would have done if she were running a nursery school or day care center. She did not set aside a separate portion of her house for the exclusive use of the children she baby-sat. They, like her own children, played about the house while she went about her noncommercial routine of caring for her home and entertained her friends. She did all the same things for the children she baby-sat as she did for her own children.[4]

Conversely, Republic asserts that the activity upon which the claim is based, i.e., the "alleged negligent failure on the part of Ms. Sandrus to properly supervise and care for Plaintiff's decedent," was the "same activity that constitutes the business pursuit." Therefore, "the exception to the exclusion, as to activities 'ordinarily incident to non-business pursuits,'" should be inapplicable.

---

**4.** Appellant's argument is somewhat at variance with the "Statement of Material Facts Not In Dispute," which clearly states that Sandrus was *not* looking after "the children of neighbors and relatives," but was indeed "running a nursery school or day care center."

Both parties note, correctly, that there is a conflict in jurisdictions regarding the application of the non-business exception to the business pursuit exclusion. The conflict centers on whether the exception should apply to cancel the exclusion when the insured, at the time of injury to a baby-sat child, is also caring for her *own* child or seeing to some *other* household chore.

Various methods of analysis have been used by courts in other jurisdictions to interpret the language used in the exception. *See generally* Annot., 48 A.L.R.3d 1096 (1973). Some jurisdictions have taken a broad view of child care, as did the California Supreme Court in *Crane v. State Farm Fire and Casualty Company,* 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971). There a child was burned while in the care of a baby-sitter. The sitter was paid for her services; however, she cared for the child who was injured while simultaneously supervising her own two children. Finding the insured covered, the Court stated:

> Indeed, it is difficult to conceive of an activity more ordinarily incident to a noncommercial pursuit than home care of children.

*Crane, supra* 95 Cal.Rptr. at 515, 485 P.2d at 1131. Consequently, *"Crane* [citations omitted] views almost any injury due to a babysitter's negligent supervision of a child as potentially within the exception." *State Farm Fire & Cas. Co. v. Moore,* 103 Ill.App.3d 250, 58 Ill.Dec. 609, 613, 430 N.E.2d 641, 645 (1981). Other jurisdictions follow such an approach. *Bankers Standard Ins. Co. v. Olwell,* 309 N.W. 2d 799 (Minn.1981); *Western Fire Ins. Co. v. Goodall,* 658 S.W.2d 32 (Mo.App.1983).

Another analysis is that employed in *Gulf Insurance Company v. Tilley,* 280 F.Supp. 60 (N.D.Ind.1967), *aff'd per curiam* 393 F.2d 119 (7th Cir.1968). In that case a child, while in the care of her baby-sitter, was severely burned when a coffee pot fell over, spilling its contents on the child. The court focused on the type of activity occurring at the time and the question of for whom the coffee was intended. The court rationalized that since the preparation of the

coffee was for the baby-sitter's personal use and was not an activity ordinarily associated with the function of child care, the exception to the exclusion applied and coverage was provided. The implication is that had the sitter been preparing hot soup for the child instead of coffee for herself the result would have been different. Such a distinction was recognized by the Illinois Appellate Court in *State Farm Fire & Cas. Co. v. Moore, supra* 58 Ill.Dec. at 613, 430 N.E.2d at 645:

> As the lunch was for Moore and her child as well as the children for whom she sat, her activity falls within the exception. By contrast if she had been preparing lunch only for Marcus, [the child in her care] her activity would be, more likely, a business pursuit.

We find such analysis unpersuasive. We think the much better reasoned approach is that of the Supreme Court of Alabama in *Stanley v. American Fire & Cas. Co.*, 361 So.2d 1030 (Ala.1978). There a child was injured when she fell into a hot bed of coals in the sitter's home fireplace while the sitter was preparing lunch for herself, her children and the children for whom she was baby-sitting. The Court rejected the analysis used in *Tilley, supra* stating:

> *The business of child care contemplates the exercising of due care to safeguard a child of tender years from household conditions and activities;* and, any activity of the insured in this regard from which injury results cannot logically be called an activity ordinarily incidental to a non-business pursuit. In other words, *the activity referred to is a failure to supervise rather than making coffee for a third party.* Undertaking the business relation of child care for compensation is certainly not ordinarily incident to the conduct of a household. [emphasis added]

*Stanley, supra* 361 So.2d at 1032. The Alabama Court recognized that child care for pay is not simply the "temporary or causal keeping of children, but rather ... a more permanent arrangement for an agreed upon compensation." *Stanley, supra,* 361 So.2d at 1032. After opining that the

California Court of Appeals' decision in *Crane v. State Farm Fire and Casualty Company*, 14 Cal.App.3d 727, 92 Cal.Rptr. 621 (1971), was much better reasoned than that of the Supreme Court of California reversing it, *Crane, supra*, 95 Cal.Rptr. 513, 485 P.2d 1129, the Alabama Court quoted liberally from the California Court of Appeals.

" 'Babysitting' is an occupation in which the babysitter has the responsibility of keeping her infant charges entertained and protected from harm and even mischief. (*Tropical Coach Lines, Inc. v. King* (1962 Fla.Sup.Ct.) 147 So.2d 318, 319.)

"The term 'babysitting' perhaps is inaptly used to describe the contract for day care for children involved here. In ordinary parlance, the 'babysitter' is one employed as a matter of convenience by parents to stay with a child or children, so that they may for a few hours seek their pleasure, or tend to affairs external to the home. This differs from day-in, day-out child care for an indefinite period, as here.

" 'Business' in its broad sense embraces anything about which a person may be busy, and in its usual sense, signifies an undertaking or calling for gain, profit, advantage or livelihood. While 'business pursuit' in some contexts is synonymous with 'business,' it more accurately denotes a continued, extended or prolonged course of business or occupation. Child care for compensation as evidenced in this case was much more than a casual accommodation, and was properly found to be a 'business pursuit' under the terms of the policy exclusion. [citations omitted]

"It has been held in a variety of contexts that a single day's act, or single transaction does not qualify as a business. We need not explore the ramifications of these definitions, in view of the continuity of the services here contracted for and performed, according to the evidence. The present case does not involve casual babysitting, a temporary arrangement for an hour, a day or an evening, for the convenience of parents. It seems clear that while

an individual instance might involve a business arrangement, such would lack the continuity of a 'business pursuit.' "

*Stanley, supra* 361 So.2d at 1032–33 (*quoting Crane v. State Farm Fire and Casualty Company,* 92 Cal.Rptr. at 622).

Other jurisdictions have followed the *Stanley* approach. *See Republic Ins. Co. v. Piper,* 517 F.Supp. 1103 (D.Colo. 1981); *Peterson v. Highland Insurance Company,* 328 So.2d 49 (Fla.Dist.Ct.App.1976); *Moncivais v. Farm Bureau Mut. Ins. Co.,* 430 N.W.2d 438 (Iowa 1988); *Haley v. Allstate Ins. Co.,* 129 N.H. 512, 529 A.2d 394 (1987); *Allstate Insurance Co. v. Kelsey,* 67 Or.App. 349, 678 P.2d 748 (1984), *review denied,* 297 Or. 227, 683 P.2d 91 (1984). We agree with that approach. The activity alleged as the basis for the claim is the negligent failure to provide proper care and supervision of the child while engaged in the business pursuit of providing child care for compensation on a regular basis, regardless of the specific conduct causing the injury to the child.

## II

Appellant's second argument is that the trial judge erred in granting summary judgment because a dispute of fact exists "as to the alleged tortious conduct in question."[5] She concedes, however, that this argument exists "only if this Court decides that such a factual determination is necessary to properly construe the applicability of the exclusion."

In their statement of material facts not in dispute, the parties agreed that:

---

5. McCloskey in her complaint alleged that Sandrus had "negligently handled Michelle Ann Vermillion ... with such force as to cause grievous and fatal injuries." Sandrus maintains she was downstairs doing laundry during the time the injuries must have occurred and returned upstairs to find the child in distress.

Michelle Vermillion was fatally injured during the early afternoon hours of April 4, 1985, while at the Sandrus residence. The precise circumstances under which those fatal injuries were sustained is in dispute between the parties in the pending tort litigation. *However, the gravamen of that action is an alleged negligent failure on the part of Ms. Sandrus to properly supervise and care for Plaintiff's decedent.* [emphasis added]

In view of our holding in part one hereof, the specific conduct causing the injury to the child is not relevant to the question of coverage, that question being independent and separable from the factual dispute in the pending tort case. *See Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 405–06, 347 A.2d 842, 848–49 (1975). There being no potentiality of coverage regardless of the resolution of the factual dispute, summary declaratory judgment properly was granted. *Harpy v. Nationwide Mutual Fire Ins.,* 76 Md. App. 474, 545 A.2d 718 (1988).

JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.