**UNITED STATES FIDELITY & GUARANTY COMPANY,**
Plaintiff,

v.

**Fred J. HELTSLEY; Jennie Lynn Heltsley; Joseph Benson, a Minor, By and Through His Natural Parents, Robert Benson and Pamela Benson; Robert Benson; and Pamela Benson, Defendants.**

No. 89–1346–K.

United States District Court,
D. Kansas.

March 30, 1990.

Larry A. Withers, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for plaintiff.

Gerald W. Scott, Wichita, Kan., for Joseph, Robert and Pamela Benson.

Arthur H. Davis, Wichita, Kan., for Fred J. and Jennie Lynn Heltsley.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This matter is currently before the court on the motion for summary judgment of United States Fidelity & Guaranty Company. A hearing on USF & G's motion was held on March 26, 1990. Consistent with the views of the court expressed at the hearing on the present matter, and for the reasons stated herein, the plaintiff's motion for summary judgment is granted.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R. Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The following facts may be taken as established for purposes of resolving the present motion. In October, 1986, Jennie Heltsley agreed with Pamela Benson to care for Benson's infant son Joseph during the day on weekdays while Benson was at work. Joseph had been born on September 10, 1986, and was about six weeks old when Heltsley began taking care of him in her home. Benson paid Heltsley $40.00 per week to take care of Joseph, the payments being made every Friday.

In November, 1986, Heltsley entered into an agreement with the mother of six-year-old Sabrina Modlin to take care of Sabrina in the Heltsley home. Heltsley agreed to care for Sabrina in the mornings during the week and take her to school every day. The parties to the agreement understood that if conditions warranted or if Heltsley felt like it, she would drive Sabrina to school in her car. Sabrina's mother agreed to pay Heltsley $20.00 per week, which was made through $40.00 payments every other Friday.

On March 18, 1987, Heltsley was caring for Joseph and Sabrina in her home, in accordance with these agreements, when she began to prepare to take Sabrina to school. She placed Joseph in a baby carrier and put him on the floor behind the front passenger seat of her car. She returned to the house to get her purse and bottle and lock the door. Sabrina and Heltsley's own four-year-old daughter Tessi were in the front seat of the car. Heltsley came back to the car, got in, closed the door, and drove to Sabrina's school.

The accident occurred when Tessi, either while getting into the car or while moving from the back seat to the front seat where she typically rode, slipped and fell on Joseph's head. Heltsley has testified that the sole purpose for Joey, Sabrina, and Tessi to be in the car was to allow Heltsley to take Sabrina to school.

Joseph, by and through his parents, has brought an action against Heltsley in state court. In the pretrial order entered in the state action, the plaintiffs therein assert that Heltsley was negligent in

1. Failing to use appropriate car seats when placing children of tender years in an automobile.

2. Failing to maintain control over children in her care, custody, and control.

3. Failing to use proper supervision and care over children in her control.

4. Failing to use seat belts and other appropriate restraints for children not in car seats.

5. Placing an infant on the floor board of an automobile without appropriate protection to prevent another child or other object from falling off the car seat and striking said infant.

Pursuant to a disclaimer of coverage and reservation of rights, plaintiff USF & G has undertaken the defense of Heltsley in the state litigation.

Two exclusions to coverage under the Heltsley homeowner policy are potentially relevant here. Under Paragraph 1.b., coverage is not provided for personal injuries or property damage

   b. arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured.**

   This exclusion does not apply to:

   (1) activities which are usual to non-**business** pursuits; ...

The policy defines business as including a "trade, profession or occupation."

The second exclusion relates to the use of motor vehicles. Paragraph 1.e. excludes coverage for injuries or damage

   e. arising out of

   (1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an **insured;**

   (2) the entrustment by an **insured** of a motor vehicle or any other motorized land conveyance to any person; ...

The policy also contains Endorsement HO–322, which defines home day care as a business pursuit within the meaning of the exclusions portion of the policy. Under this endorsement, which is entitled "**NO**

SECTION II—LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS," the policy provides:

> If an **insured** regularly provides home day care services to a person or persons other than **insureds** and receives monetary or other compensation for such services, that enterprise is a **business** pursuit. Mutual exchange of home day care services, however, is not considered compensation. The rendering of home day care services by an **insured** to a relative of an **insured** is not considered a **business** pursuit.

The exclusion of business activities from liability coverage under the base policy is also modified by Endorsement PL/H 8408, entitled "HOMEOWNERS EXTENDED PROTECTION ENDORSEMENT," which provides in part:

**SECTION II COVERAGES**

. . . .

> 2. **Business Activities of Minors.** Your Personal Liability (Coverage E) and Medical Payments to Others (Coverage F) coverages are extended to cover the normal business activities of minors. This includes such part-time activities as newspaper delivery, baby sitting, caddying and lawn care.
>
> (This amends Section II—Exclusions—1.b.)

The defendants in the present action contend that the business exclusion does not apply, and the injuries to Joseph are covered under the homeowner's policy issued by plaintiff USF & G. The essence of the arguments advanced by both the Heltsleys and the Bensons is that coverage exists since Jennie Heltsley was involved merely in "babysitting" rather than "day care." This argument, however, must be rejected for three reasons. First, it is inconsistent with the insurance agreement entered into between USF & G and the Heltsleys. Second, it has been rejected in the current trend of decisions addressing the issue. Third, it is not supportable under Kansas law.

The insurance agreement bars coverage for personal injury arising from the business activities of the insured. The policy defines a business as a trade, profession, or occupation. A business activity, under a policy using similar language, has been interpreted to require both continuity and a profit element. "As to the first, there must be a customary engagement or a state occupation; as to the latter, there must be shown to be such activity as a means of livelihood, gainful employment, procuring subsistence or profit, commercial transactions or engagements." *Krings v. Safeco Ins. Co. of America,* 6 Kan.App.2d 391, Syl. ¶ 5, 628 P.2d 1071 (1981).

In the present case, the child was injured while Jennie Heltsley was engaged in a business activity. The engagement between Heltsley and Joseph's mother to supply child care services was continuous. The time of the child care services was neither irregular nor of limited duration. Heltsley took care of Joseph on a daily basis over the course of several months. Both the supply of child care services and the payment for those services were made regularly.

The suggestion by the defendants in the present action that Heltsley's actions were simply "babysitting" must be rejected as contrary to the plain language of the insurance agreement. As discussed above, Heltsley's activities fall within the policy's business activities exclusion. In addition, an endorsement accompanying the policy expressly states that the business activities exclusion does not apply to minor babysitting. The endorsement does not provide coverage here, of course, since Heltsley was not a minor at the time of the accident. But the clause is important here, since there would be no reason to include such an endorsement in the policy unless the business activities exclusion otherwise would include all forms of continuous child care for profit.

The defendants also argue that the injuries to Joseph in the present case fall within the exception to the business exclusion for injuries arising from activities that are usual to non-business activities. Several cases from other jurisdictions have addressed the coverage of child care services under a homeowner's policy. Some cases have turned on facts relating to the subjective knowledge of the parties. Thus, in

*Grinnell Mut. Reins. Co. v. Voeltz*, 431 N.W.2d 783 (Iowa 1988), where the insurance agent knew the insured believed the policy covered babysitting and did nothing to correct this belief, the court held that injuries arising from babysitting activities were not excluded from coverage. In *American Family Ins. Co. v. Dewald*, 597 F.2d 1148 (8th Cir.1979) (applying N.D. law), the insurance agent had told insureds that their policy would not cover babysitting activities, and had offered coverage for such activities for a small additional premium. The court held that injuries arising from babysitting were not covered under the homeowner's policy. In the present case, however, there is no evidence that either party to the insurance contract had any knowledge of the other's subjective interpretation of the terms of the agreement.

Several jurisdictions have held that similar homeowner policies cover injuries arising from babysitting activities. *See Crane v. State Farm Fire & Cas. Co.*, 5 Cal.3d 112, 95 Cal.Rptr. 513, 485 P.2d 1129 (1971); *Nationwide Mut. Fire Ins. Co. v. Collins*, 136 Ga.App. 671, 222 S.E.2d 828 (1975); *State Farm Fire & Cas. Co. v. Moore*, 103 Ill.App.3d 250, 58 Ill.Dec. 609, 430 N.E.2d 641 (1981); *Foster v. Allstate Ins. Co.*, 637 S.W.2d 655 (Ky.App.1981); *Western Fire Ins. Co. v. Goodall*, 658 S.W.2d 32 (Mo. App.1983). These decisions have normally focused on the exception for injuries arising from activities "ordinarily incident to non-business pursuits."

In *Crane*, the leading case following this view, the court noted that the homeowner was caring for two of her own children in addition to the other children she was babysitting. The court concluded that the injury to one of the other children was covered under the policy, stating "it is difficult to conceive of an activity more ordinarily incident to a noncommercial pursuit than home care of children." 95 Cal.Rptr. at 515, 485 P.2d at 1131. This approach has forced some courts to some artificial and unconvincing distinctions. Thus, in *Moore*, 58 Ill.Dec. at 613, 430 N.E.2d at 645, the exception was found to apply where the child was injured while his babysitter prepared lunch, since lunch was being prepared for the sitter's own children and not just for the injured child. The court indicated that if the babysitter had been preparing lunch for the injured child only, the business activities clause would probably exclude coverage. This sort of distinction was made in *Gulf Ins. Co. v. Tilley*, 280 F.Supp. 60 (N.D.Ind.1967), aff'd, 393 F.2d 119 (7th Cir. 1968), where the court held that the business exclusion did not apply, since the child was burned when a coffee pot spilled. The court stressed that the sitter was preparing the coffee for her personal use.

This approach has been rejected in the more recent trend among the states. *See Republic Ins. Co. v. Piper*, 517 F.Supp. 1103 (D.Colo.1981); *Stanley v. American Fire & Cas. Co.*, 361 So.2d 1030 (Ala.1978); *Peterson v. Highland Insurance Co.*, 328 So.2d 49 (Fla.Dist.Ct.App.1976); *Moncivais v. Farm Bureau Mut. Ins. Co.*, 430 N.W.2d 438 (Iowa 1988); *McCloskey v. Republic Ins. Co.*, 80 Md.App. 19, 559 A.2d 385, *cert. denied*, 317 Md. 640, 566 A.2d 101 (1989); *Haley v. Allstate Ins. Co.*, 129 N.H. 512, 529 A.2d 394 (1987); *Allstate Ins. Co. v. Kelsey*, 67 Or.App. 349, 678 P.2d 748, *rev. denied*, 297 Or. 227, 683 P.2d 91 (1984). The leading case is *Stanley v. American Fire & Cas. Co.*, 361 So.2d at 1030. In *Stanley*, the sitter was caring for several children, including her own, when one of the children fell into a hot bed of coals in the sitter's fireplace while she prepared lunch. The court rejected the distinction advanced in cases such as *Crane* and *Tilley*:

> The business of child care contemplates the exercising of due care to safeguard a child of tender years from household conditions and activities; and, any activity of the insured in this regard from which injury results cannot logically be called an activity ordinarily incidental to a non-business pursuit. In other words, the activity referred to is a failure to supervise rather than making coffee for a third party. Undertaking the business relation of child care for compensation is certainly not ordinarily incident to the conduct of a household.

361 So.2d at 1032.

The controlling factor is not the specific act causing the injury to the child, but

whether the sitter is alleged to have failed to use due care in caring for the child. Thus the business exclusion applies and bars coverage where

> [t]he activity alleged as the basis for the claim is the negligent failure to provide proper care and supervision while engaged in the business pursuit of providing child care for compensation on a regular basis, regardless of the specific conduct causing the injury to the child.

*McCloskey*, 559 A.2d at 390.

Several cases have indicated that certain babysitting or child care engagements may be so brief and limited that they do not rise to the level of a business activity. Thus, in *Camden Fire Ins. Assn. v. Johnson*, 294 S.E.2d 116 (W.Va.1982), where the homeowner cared for her grandson primarily out of love and affection, and was often uncompensated for her services, the court found that the child care was not a business activity. *Stanley* also addressed the issue, stressing the distinction between "day-in, day-out child care for an indefinite period," and casual babysitting, "a temporary arrangement for an hour, a day or an evening, for the convenience of parents." 361 So.2d at 1032–33 (quoting *Crane v. State Farm Fire & Cas. Co.*, 14 Cal.App.3d 727, 92 Cal.Rptr. 621, 622 (1971), *rev'd*, 95 Cal. Rptr. at 513, 485 P.2d at 1129).

Here, there was child care supplied, for pay, over an indefinite period. Thus, the policy excludes coverage for injuries to the child Joseph. This result is consistent not only with a plain and direct reading of the policy and from the better reasoned case law from other jurisdictions, but also with the stated opinion of the Kansas Supreme Court. In *Heinson v. Porter*, 244 Kan. 667, 772 P.2d 778 (1989), the court discussed the issue in connection with the lower court's ruling that the policy's coverage for child care was ambiguous and should be construed against the insurer. The Supreme Court rejected not only this result, but the specific approach taken in both *Tilley* and *Crane*.

> The exclusion in the policy clearly excluded business activities and the day care

operation was a business endeavor. The district court then proceeded upon a tortured path to hold that, while the day care operation was a business activity, the specific act of negligence claimed arose from a nonbusiness pursuit (checking on her barking dog and leaving the child unattended while so checking). This reasoning is inappropriate. Presumably, if an automobile rolls off a hoist at a repair shop and injures someone while the serviceman is tying his shoelace, the accident occurred as a result of a nonbusiness pursuit.

244 Kan. at 672–73, 772 P.2d 778.

The defendants in the present case correctly note that, under the nature of the case in *Heinson*, this conclusion is dicta. Nonetheless, it remains a clear and unqualified statement of the state court's opinion on the present issue and provides persuasive evidence that the defendants' arguments are not supportable under Kansas law.

Defendant Heltsley's activities were not prompted primarily by filial or kinship ties. They were motivated by a desire for compensation. Nor were they engaged in for a limited time or at irregular intervals. Under the applicable case law, they are therefore business activities, and the policy does not provide coverage for claims for personal injuries arising from them.

Plaintiff USF & G also contends that coverage under the policy is excluded under the provision dealing with the use, loading, or unloading of an automobile. As with the business activities exclusion, there is no reasonable way to reject this argument. The only real argument advanced by the defendants is based on *Upland Mut. Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974).

The court held in *Noel* that an exclusion relating to the "ownership, maintenance, operation, use, loading and unloading" of automobiles did not apply under the facts of the case. The case, however, is wholly inapplicable here. In *Noel*, the homeowner was charged with negligent entrustment of the automobile, and the court concluded that the exclusion was only intended to apply to the insured's direct use

of the automobile. Since the policy did not explicitly exclude injuries arising from the entrustment of the insured's automobile, the court held that coverage extended to such injuries.

The defendants' reliance on *Noel* is thus inappropriate since the Bensons do not allege in the state litigation that Jennie Heltsley negligently entrusted her car to anyone. Rather, they allege that she was negligent in failing to use seat belts and car seats appropriate for children, failing to maintain control of the children in the car, and placing the infant Joseph on the floor board of the car without appropriate protection. All of these directly relate to the use, loading, and unloading of the insured's car. In any event, of course, even if the plaintiffs in the state litigation did allege negligent entrustment by Hentley, *Noel* still would have no application since, unlike the policy in that case, the policy here contains an explicit exclusion of injuries arising from "the entrustment by an insured of a motor vehicle."

IT IS ACCORDINGLY ORDERED this 30th day of March, 1990, that the plaintiff's motion for summary judgment is hereby granted.