**TRAVELERS INDEMNITY CO., Plaintiff,**

v.

**Dana FANTOZZI, A Minor By and Through her mother and guardian Renee FANTOZZI, et al., Defendants.**

Civ. A. No. 91–1398.

United States District Court, E.D. Pennsylvania.

March 19, 1993.

82

Charles W. Craven, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, for plaintiff Travelers Indem. Co.

Arlene G. Simolike, Philadelphia, PA, for defendants Dana Fantozzi and Renee Fantozzi.

. No one appeared on behalf of defendants Frankie Hughes, Francis Hughes and Annette Hughes.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

This is a declaratory judgment action by Travelers Indemnity Company ("Travelers") against defendants Dana and Renee Fantozzi (the "Fantozzis") and Frankie, Francis and Annette Hughes (the "Hughes") to determine coverage for claims asserted by the Fantozzis against the Hughes in a civil action (the "underlying action") instituted in the Court of Common Pleas of Bucks County on October 31, 1990. Currently before me is the motion of plaintiff Travelers for reconsideration of my Order of October 20, 1992 which denied Travelers' motion for summary judgment (Document No. 17).

This Court has jurisdiction over this case under 28 U.S.C.A. § 1332 (West 1966 & Supp.1992), as the parties are of diverse citizenship, and the amount in controversy is alleged to be in excess of $50,000.

. For the reasons discussed below, the motion of Travelers for reconsideration will be granted, and summary declaratory judgment will be entered in favor of Travelers.

### I. FACTUAL BACKGROUND

The following facts are not in dispute. From January 1985 to May 1989, pursuant to an oral agreement between Renee Fantozzi and Francis and Annette Hughes, the adult Hughes babysat Ms. Fantozzi's then infant daughter, Dana, in their home on a regular basis in return for weekly compensation. Frankie Hughes, the minor son of Francis and Annette Hughes, lived in the Hughes' household during this time. The Hughes agreed to the babysitting arrangement as a means of earning temporary income while Francis Hughes was laid off from his customary job.

In 1989, after the Fantozzis had moved to Virginia, a therapist allegedly discovered that Dana had been sexually molested by Frankie Hughes during the years she spent in the Hughes' household under their care. On October 31, 1990, the Fantozzis commenced the underlying action claiming that the Hughes were negligent because they breached their duties owed as babysitters and they failed to supervise their minor son, Frankie Hughes. The Fantozzis also include a count against Frankie Hughes for negligent infliction of physical and emotional harm.

The Hughes sought defense and indemnity from Travelers in connection with the Fantozzi claims pursuant to the personal liability coverage provisions of the homeowners insurance policy issued to the Hughes by Travelers which covered the years of January

1985 through May 1989.[1] In its earlier motion for summary judgment, Travelers argued that the homeowners insurance policy does not cover the claims and damages asserted by the Fantozzis because the insurance policy excludes coverage for, among other things, the business pursuits of an insured. My Order of October 20, 1992 denied Travelers' motion for summary judgment based on the existence of a factual issue as to another exclusion in the Travelers policy. I agree, however, that Travelers' argument concerning the "business pursuits" exclusion in the Travelers policy, if efficacious, would result in a finding that Travelers is entitled to judgment in their favor as a matter of law. Therefore, I will reconsider Travelers' motion for summary judgment.

## II. DISCUSSION

### A. *Standard*

Travelers has moved for reconsideration of my earlier Order which denied Travelers' motion for summary judgment based on the existence of at least one genuine issue of material fact. I find that Travelers' motion for reconsideration raises issues which demonstrate that there are indeed no genuine issues of material fact as to one of the exclusions in the Travelers' homeowner's policy issued to the Hughes. Given that this memorandum reconsiders an earlier summary judgment motion, the same summary judgment standard applies.

The examination to be undertaken of a summary judgment motion in federal court is set forth in Fed.R.Civ.P. 56. Rule 56(c) states that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2725, at 93–95 (1983)). In addition, a dispute over a material fact must be "genuine," *i.e.,* the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

When a motion for summary judgment is made and supported as provided in ... [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). The evidence proffered does not have to be in a form which would be admissible at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the nonmoving party to make the showing ... [required by Rule 56(e) ]." *Id.*

The evidence of the nonmoving party is to be considered as true, and justifiable inferences arising from the evidence are to be drawn in his or her favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. If the evidence of the nonmoving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2511. For example, a nonmoving party may not successfully oppose a summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations

---

1. The Travelers' policy (Policy No. 207407204 632 1) actually consisted of five one-year policies from May 14, 1984 until May 14, 1989. Hereinafter, the policies will be referred to collectively as "the policy."

of an affidavit." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). Rather, the nonmoving party must offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. *Id.* at 888, 110 S.Ct. at 3188.

## B.  Choice of Law

As a threshold matter, this court must determine which state's law should apply to this action. Neither party has briefed the issue.

■■■ Where federal court jurisdiction is based on diversity of citizenship, as it is here, the district court must apply the choice of law rules of the state in which it sits. *St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.2d 1428, 1431 n. 3 (3d Cir.1991) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941)). Under Pennsylvania choice of law rules, an insurance contract is governed by the law of the state in which the contract was made. *Crawford v. Manhattan Life Ins. Co.*, 208 Pa.Super. 150, 221 A.2d 877, 880 (1966). The place of making an insurance contract is the place of delivery. *Centennial Insurance Co. v. Meritor Savings Bank, Inc.*, 1992 WL 164906, at *2, 1992 U.S.Dist.Lexis 9456, at *7 (E.D.Pa. June 2, 1992). In the absence of proof as to the place of delivery, there is a presumption of delivery at the residence of the insured. *Crawford*, 221 A.2d at 881 (citing *Edwards v. Commonwealth Mut. Life Ins. Co.*, 197 F.2d 62, 64 (3d Cir.1952)). The pleadings, the stipulation and the policy declaration sheets show that the insureds, the Hughes, were residents of Pennsylvania when the policy was issued and delivered. Stipulation by Fantozzis and Travelers, at paragraph 5 & 6. The insurance policy, therefore, is presumed to have been made and delivered in Pennsylvania, and construction of the terms of the insurance policy shall be governed by Pennsylvania law.

## C.  Guiding Principles of Insurance Contract Law

■■■ The rules guiding the interpretation of an insurance contract in Pennsylvania are well-settled. The interpretation of the terms of an insurance contract is a question of law. *Hamilton Bank v. Insurance Co. of N. America*, 384 Pa.Super. 11, 557 A.2d 747, 750 (1989) (citing *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005, 1008 (1984)). "In construing an insurance policy, unambiguous terms are to be given their 'plain and ordinary meaning.'" *St. Paul Fire & Marine Ins. Co.*, 935 F.2d at 1431. (quoting *Pennsylvania Mfrs. Ass'n Ins. Co. v. Aetna Casualty & Sur. Ins. Co.*, 426 Pa. 453, 233 A.2d 548, 551 (1967)). Terms in an insurance contract which are ambiguous, however, are to be construed strictly against the insurer and in favor of the insured. *St. Paul Fire & Marine Ins. Co.*, 935 F.2d at 1431 (citing *Mohn v. America Casualty Co.*, 458 Pa. 576, 326 A.2d 346, 351 (1974)).

■■■ The determination of whether contract language is ambiguous is a question of law. *International Union, UAW, v. Mack Trucks, Inc.*, 917 F.2d 107, 111 (3d Cir.1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991). "Under Pennsylvania law a provision of a policy is ambiguous if reasonable intelligent people, viewing the contract as a whole, could disagree as to its meaning and more precise language could have eliminated ... the ambiguity." *Hamilton Bank*, 557 A.2d at 750; see also *Mellon Bank N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir.1980) (contract ambiguity is "intellectual uncertainty; ... the condition of admitting two or more meanings, of being understood in more than one way, or referring to two or more things at the same time...."); *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 761 (3d Cir.1985) ("[T]he language of the policy may not be tortured ... to create ambiguities where none exist.").

## D.  Exclusion for Business Pursuits

■■■ Regardless of the sympathy that this set of allegations evokes, it must be determined whether or not there is coverage for the Fantozzis' claims under the language of the policy. The Travelers' homeowners' policy provided that the personal liability insurance "does not cover bodily injury ... arising out of the business pursuits of any in-

sured except those of a clerical office employee." The policy defines "business" to include "trade, business or occupation." I find that this provision is couched in non-technical laymen's terminology for which insureds in the position of the Hughes needed no explanation as to its meaning or effect, and therefore, I find that the provision is unambiguous as a matter of law. *See Myrtil v. Hartford Fire Ins. Co.*, 510 F.Supp. 1198, 1201 (E.D.Pa. 1981) (finding the same language "clearly not ambiguous.").

The United States Court of Appeals for the Third Circuit has held that activity encompassed within a "business pursuits" exclusion in an insurance policy requires two elements: 1) continuity, and 2) a profit motive. *Sun Alliance Ins. Co. v. Soto*, 836 F.2d 834, 836 (3d Cir.1987).

The first element, continuity, is clearly satisfied in this case. The Hughes took care of Dana on a daily basis over the course of more than four years. Thus, the time of the babysitting services was neither irregular nor of limited duration. *See U.S. Fidelity & Guar. Co. v. Heltsley*, 733 F.Supp. 1418, 1421 (D.Kan.1990) (babysitting services found continuous when provided on a daily basis and over the course of several months); *Burt v. Aetna Cas. and Sur. Co.*, 720 F.Supp. 82, 85 (N.D.Tex.1989) (babysitting services found continuous when provided for a set period of time every day for three months).

Some cases have suggested that certain babysitting arrangements may be so brief and limited that they do not rise to the level of a business pursuit. Such is the case, for example, when a homeowner cares for her grandson primarily out of love and affection and is often uncompensated for her services, *Camden Fire Ins. Assn. v. Johnson*, 170 W.Va. 313, 294 S.E.2d 116 (1982), or when there is a temporary arrangement for an hour, a day, or an evening, and for the convenience of the parents, *Heltsley*, 733 F.Supp. at 1423 (quoting *Stanley v. American Fire & Cas. Co.*, 361 So.2d 1030, 1032–33 (Ala.1978)). Such is not the case here. The Hughes were full-time child care providers for the Fantozzis. They took care of Dana everyday and all day while Renee Fantozzi worked. The Hughes were not adolescents who occasionally babysat to earn some spending money on weekends. They were adults who babysat daily, for a lengthy period, and as a means of earning a living. I find, therefore, that the babysitting services were continuous and satisfy the first element of the "business pursuits" exclusion.

■ The second element, a profit motive, "may be shown by such activity as a means of livelihood, a means of earning a living, procuring subsistence or profit, commercial transactions or engagements." *Sun Alliance Ins. Co.*, 836 F.2d at 836. The Fantozzis concede that the Hughes agreed to babysit Dana on a full-time basis as "a means of gaining temporary income while [Francis Hughes] was laid off from his customary job." Memorandum of Law Opposing Travelers' Motion for Reconsideration, at 10. Also, the Fantozzis do not contend that the babysitting arrangement was prompted primarily by filial or emotional ties. Clearly, there is no dispute that the Hughes were motivated by a desire for compensation. I find, therefore, that the babysitting services satisfy the second element of the "business pursuits" exclusion.

In sum, Travelers has demonstrated that there remain no genuine issues of material fact as to whether the "business pursuits" exclusion in the Travelers policy applies to the Hughes' babysitting services. I conclude, therefore, that the Travelers' policy does not provide coverage for claims made by the Fantozzis in the underlying tort action as a matter of law.

## III. CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration will be granted. This Court's Order of October 20, 1992 denying plaintiff's motion for summary judgment will be vacated, and plaintiff's earlier motion for summary judgment will be granted.

An appropriate Order follows.

### ORDER

AND NOW, this 19th day of March, 1993, upon consideration of the motion of plaintiff Travelers' Indemnity Co. for reconsideration (Document No. 17) of this Court's Order of

October 20, 1992 denying plaintiff's earlier motion for summary judgment, and the responses of the parties thereto, for the reasons set forth in the attached memorandum, having considered the evidence presented in a light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences arising from the pleadings and affidavits of record, having found that there remain no genuine issues of material fact with respect to the coverage of the Travelers' Indemnity Co. homeowner's insurance policy issued to Francis and Annette Hughes, and that the Travelers' Indemnity Co. is entitled to judgment as a matter of law, it is hereby **ORDERED** that plaintiff's motion is **GRANTED.** It is **FURTHER ORDERED** that this Court's Order of October 20, 1992 is **VACATED** and plaintiff's earlier motion for summary judgment (Document No. 10) is **GRANTED.**

It is hereby **DECLARED** that the Travelers' Indemnity Co. has no duty to defend or indemnify Francis, Annette or Frankie Hughes based on the Travelers' Indemnity Co. Homeowners' Insurance Policy (Policy No. 207407204 632 1) for the claims made in the underlying matter captioned *Fantozzi v. Hughes,* pending in the Court of Common Pleas of Bucks County (October 31, 1990).

This is a final judgment.