MILLERS' MUTUAL INSURANCE
ASSOCIATION OF ILLINOIS,
Plaintiff/Respondent,

v.

Michael PENNINGTON and Jackie
Pennington, Defendants,

and

Julie Mueller and Lawrence Edward
Jasper, Defendants/Appellants.

No. 65261.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 13, 1994.

Alan W. Cohen, St. Louis, Roger L. Ponder, House Springs, for defendants/appellants.

Scott C. Harper, Aaron I. Mandel, Brinker, Doyen & Kovacs, P.C., Clayton, for plaintiff/respondent.

SMITH, Presiding Judge.

Defendants, Julie Mueller and Lawrence Edward Jasper, parents of a deceased child, appeal from a summary judgment entered in favor of plaintiff, Millers' Mutual Insurance Association of Illinois, holding that defendants Michael and Jackie Pennington are not covered by their homeowner policy for any liability for the death of the decedent child. Penningtons did not appeal. We affirm.

In April of 1991 Jackie Pennington (hereinafter Pennington) advertised in a local newspaper her services as a baby-sitter.[1] Mueller learned of Pennington's services from the advertisement. She was not previously aware of Pennington. Mueller agreed to pay Pennington approximately $60 per week to baby-sit her son Lawrence Edward Jasper, Jr. Pennington commenced her services for Mueller on April 22. On April 23 she also provided baby-sitting service for two other children whose parents learned of the services through the advertisement. She was to receive $60 per week to baby-sit those children. The services were for eight hours per day for the work days of the week. Pennington was also caring for her two preschool age children at the same time. On April 23, decedent, while in the care of Pennington, left the house through a door left open by Mr. Pennington and drowned in a nearby creek.

Plaintiff had issued the Penningtons a homeowners policy on October 20, 1990, which was in effect on April 23, 1991. Coverage E of that policy insures the policy-holder against liability for damages arising from negligence causing bodily injury to a third person. Under an EXCLUSIONS heading the policy provides:

"1. Coverage E–Personal Liability and Coverage F–Medical Payments to Others

---

1. We utilize the language "baby-sit" used by the parties, although we consider the service performed to be "day care". We believe the former includes the latter but also includes more casual, intermittent, short term care than is included within the latter.

do not apply to bodily injury or property damage: ...

b.(1) arising out of or in connection with a **business** engaged in by an **insured**. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the **business** ...

"Business" is defined in the policy as "includes trade, profession or occupation".

The business exclusion to the policy had been amended in 1987 to the language quoted above. Prior to that time the policy provided an exception to the exclusion which stated "This exclusion does not apply to: (1) activities which are usual to non-**business** pursuits; ..."

Plaintiff brought this declaratory judgment action to determine whether it was obligated to indemnify the Penningtons for any liability they might have arising from the death of the Jasper child. The trial court determined that as a matter of law the exclusion applied and the policy did not provide indemnity for the Penningtons.

Defendants rely extensively upon an analysis of the cases of *Western Fire Insurance Company v. Goodall*, 658 S.W.2d 32 (Mo. App.1983) and *Safeco Insurance Company v. Howard*, 782 S.W.2d 658 (Mo.App.1989) in challenging the trial court's determination of the applicability of the exclusion. Both of those cases and many others cited in the briefs dealt with resolution of the exception to the exclusion clause dealing with "non-business pursuits". By the 1987 amendment, that exception is no longer a part of the insurance contract and need not be addressed here. The only issue before us is whether Pennington's baby-sitting service was a business within the provisions of the policy.

The courts in determining what is a "business" within such policy language have established certain guidelines.[2] The activity engaged in must have "continuity" and be for a "profit motive". *Moncivais v. Farm Bureau Mutual Insurance Company*, 430 N.W.2d 438 (Iowa 1988) [1]; *Stanley v. American Fire and Casualty Company*, 361 So.2d 1030 (Ala.1978) [3]; *Travelers Indemnity Co. v. Fantozzi*, 825 F.Supp. 80 (D.C.Pa.1993) [16]; *Safeco Insurance Company v. Howard, supra*. No question exists that Pennington was engaged in the baby-sitting service with a profit motive. The parents contend that the requisite continuity was not present because the death occurred on the second day on which Pennington provided baby-sitting services. The record here establishes that Pennington's services were not occasional, casual or temporary or for the convenience of friends or relatives. *See Stanley v. American Fire and Casualty Company, supra; Haley v. Allstate Insurance Company*, 129 N.H. 512, 529 A.2d 394 (1987) [3,4]; *Safeco Insurance Company v. Howard, supra; Western Fire Insurance Company v. Goodall, supra*. She entered into them on a long term continuing basis for the full work week. The fortuitous fact that the death occurred very shortly after she entered into the baby-sitting arrangement does not preclude a finding of continuity. At the time she began the arrangement it was her intention, and that of her customers including Mueller, that the arrangement would be a continuing one. In fact, Pennington continued baby-sitting for compensation for two years after the decedent's death.

Parents point to facts which they contend establish that the requisite requirements for a "business pursuit" established in *Goodall, supra* are not present. They point in particular to the fact that Pennington was also looking after her two children at the same time. This was a factor only in determining whether the activity was usual to non-business pursuits and therefore within the exception. We do not have the exception present here. They point also to the failure of Pennington to have a day care license and her

---

**2.** Many of the cases discuss the matter from the standpoint of the exception to the exclusion involving "business pursuits". The courts dealing with that exception wrestled with whether an activity causing the injury, although arising as a result of a business activity, was usual to non-business pursuits, as for example, cooking for a child in daycare. We are not concerned with resolution of that issue.

failure to report the income earned on her tax returns as indicative that no "business" was involved. If Pennington failed to comply with the law, that hardly changes the nature of her activities. Such matters do not determine whether an activity is a business or non-business. *Felder v. Despinasse,* 564 So.2d 1331 (La.App.1990).

The parents further contend that the activity was not a business because Pennington was not trained in it and that the death occurred because of the husband's negligence in leaving the door open and he was not engaged in the business. Both contentions are frivolous.

Judgment affirmed.

PUDLOWSKI and WHITE, JJ., concur.