COMMERCE INSURANCE COMPANY *vs.* JAMES W. FINNELL, JR., & others.[1]

No. 94-P-2087.

Middlesex. October 11, 1996. - November 22, 1996.

Present: BROWN, GILLERMAN, & IRELAND, JJ.

*Insurance,* Homeowner's insurance, Insurer's obligation to defend, Business exclusion.

Where an insured under a homeowner's policy undertook to provide baby-sitting services at regular hours for a set fee for three days a week, the business exclusion operated to bar coverage under the policy for an injury to a child sustained while in the baby-sitter's care. [702-703]

CIVIL ACTION commenced in the Superior Court Department on November 3, 1992.

The case was heard by *Hiller B. Zobel,* J., on a motion for summary judgment.

*Daniel Malis* for the defendants.
*Kim Beringhause Peacock* for the plaintiff.

GILLERMAN, J. This case came before a judge in the Superior Court on stipulated facts and the plaintiff's motion for summary judgment on a complaint seeking a declaration that the plaintiff was under no duty to defend or indemnify the Finnells regarding the claim of the Barretts whose four year old son Sean was injured at the Finnell's home while being baby-sat by Laureen Finnell. The judge allowed the motion and entered the requested declaration; the Barretts appealed.

Laureen Finnell baby-sat for Sean three days a week, from 7:30 in the morning to 4:30 in the afternoon, a total of nine hours, for which she was paid fifteen dollars per day. The

---

[1]Laureen Finnell, wife of James Finnell, and Sean Barrett by his parents, Lorraine Barrett and David Barrett.

baby-sitting arrangement between the Barretts and Laureen did not include the preparation of lunch for Sean; that was usually provided by Sean's mother. On February 19, 1992, Laureen placed a bowl of boiling water on the table in preparation for making "cream of wheat" for herself for lunch. The bowl was the same color as the bowl in which Laureen kept candy on the kitchen table. After she poured the boiling water into the bowl, Laureen went to a videotape recorder near the kitchen to insert a videotape. While she was absent from the kitchen, Sean put his left hand in the bowl of water, burning his hand.

The Finnells, and their home, were insured by the plaintiff under a standard homeowner's insurance policy. The policy was in full force at the time of the injury. The sole issue on appeal is whether Laureen's activities, while caring for Sean, fall within the business exclusion clause contained in the policy issued by the plaintiff to the Finnells.

The homeowner's policy excludes coverage for bodily injury:

> "arising out of or in connection with a business engaged in by an insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the business . . . ."

The policy also contains an endorsement which states: "If an insured regularly provides home day care services to a person or persons other than insureds and receives monetary or other compensation for such services, that enterprise is a business. . . ." The defendants do not dispute that baby-sitting is a business activity within the meaning of the policy.

The Barretts argue that Laureen's preparation of her own lunch was outside of the business of caring for Sean, and therefore the injury sustained by Sean should be covered by Laureen's policy.[2] We disagree.

Laureen's business was to care for Sean and prevent him from being harmed. The service was to be performed continu-

---

[2]The Barretts' argument relies in part on a different form of exception to the business exclusion clause which does not appear in the policy issued by the plaintiff to the Finnells. We decline to discuss it further.

ously from 7:30 in the morning to 4:30 in the afternoon, and she was paid a flat fee of fifteen dollars for each day's work. Whether the injury was caused by what Laureen did do (placing the bowl of boiling water within Sean's reach) or failed to do (failing to make certain that Sean could not hurt himself in Laureen's house) during her working hours — that is, during her business hours — is of no importance in view of the fact that the policy's exclusion applies to any "act or omission" involving a service rendered or promised which arises out of the business of baby-sitting.

Although the issue presented by this case has not, to our knowledge, been the subject of an appellate opinion, cases from other jurisdictions involving language similar to that contained in Laureen's policy support the result we reach. The court in *Farmer's Ins. Co. of Ariz.* v. *Wiechnick,* 166 Ariz. 266, 269 (1990), rejected the appellants' argument that the business exclusion did not apply because at the time of the child's injury the baby-sitter was taking care of her dog, an activity unrelated to her babysitting activities. The court held that the exclusion applied to any injuries sustained by the child while in the baby-sitter's care, regardless of what particular activity the baby-sitter was engaged in at the time. *Ibid.* "Whatever incidental activities a baby-sitter is involved in, maintaining proper supervision and a safe environment for children is the most basic element of a baby-sitter's job. It does not matter whatever else a baby-sitter might be doing at the time a child is injured, while the child is in the baby-sitter's charge the baby-sitter is engaged in the pursuit of caring for that child." *Ibid.* See also *Millers' Mut. Ins. Assn. of Ill.* v. *Pennington,* 888 S.W.2d 406, 407-408 (Mo. Ct. App. 1994) (the business exclusion applied even though the injury to the child was caused by the husband leaving the door to their home open — an argument to the contrary was dismissed by the court as "frivolous").

*Judgment affirmed.*