**STANDARD MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Tammy KIDD, and Aaron Joseph Chastain, a Minor, b/n/f Jamie L. Chastain and Jeffrey S. Chastain, Defendant.**

**No. NA 00–70–C–B/S.**

United States District Court,
S.D. Indiana,
New Albany Division.

Feb. 16, 2001.

Mark R. Smith, Smith Fisher & Maas, Indianoplis, IN, for plaintiff.

John Plummer, Jr., Bedford, IN, Paul Watts, Spencer, IN, for defendants.

### ORDER GRANTING STANDARD MUTUAL'S MOTION FOR SUMMARY JUDGMENT AND DENYING CHASTAIN'S MOTION FOR SUMMARY JUDGMENT

BARKER, District Judge.

In 1997 and 1998, Defendant Tammy Kidd provided home day care services to Aaron Joseph Chastain. On April 10, 1998, Aaron was playing in the yard of Kidd's home while receiving his regular

day care services. Unfortunately, the unexpected occurred. Aaron was severely injured when the riding lawn mower Kidd was operating "ran into, against and/or over" Aaron. Standard Mutual's Designation of Evidentiary Matters and Undisputed Material Facts in Support of Summary Judgment ("Standard Mutual's Facts"), ¶ 26. Two years later Aaron and his parents ("the Chastains") filed suit against Kidd, seeking damages for injuries he sustained in the accident.[1] The suit before the Court is a declaratory judgment action filed by Standard Mutual Insurance Company ("Standard Mutual"). Standard Mutual seeks a declaration that it has no duty under Kidd's homeowners insurance policy to make payments because of Aaron's injury or to defend and indemnify Kidd against the lawsuit in state court. The parties filed cross motions for summary judgment, which have been fully briefed. For the reasons set forth below, the Court *DENIES* Aaron Chastain's Motion for Summary Judgment and *GRANTS* Standard Mutual's Motion for Summary Judgment.

### Facts

#### The Insurance Policy

At the time of the accident causing injury to Aaron, Kidd had a homeowners insurance policy issued by Standard Mutual. Standard Mutual's Facts, ¶ 13. Homeowners Policy No. HD 1715220 ("the Policy"), attached as Exhibit A to the Affidavit of Joe Macklin, includes Personal Liability coverage with stated limits of liability of $100,000 per occurrence and Medical Payments to Others coverage with stated limits of liability of $1,000 per person. *Id.* at ¶ 14. Her Personal Liability coverage also provides that Standard Mutual would defend Kidd against any lawsuit for damages brought because of bodily injury caused by an occurrence to which her coverage applies. *Id.* at ¶ 15.

Whether the injuries suffered by Aaron are covered turns on language in the business pursuits exclusion and home day care endorsement that are part of Kidd's homeowners insurance policy. The Policy's Personal Liability coverage and Medical Payments to Others coverage contains the following business pursuits exclusion:

1. **Coverage E—Personal Liability** and **Coverage F—Medical Payments to Others** do not apply to "bodily injury" or "property damage":

   \*     \*     \*     \*     \*     \*

   **b.** Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business";

Exhibit A at 12 (boldface in original). The Policy defines "business" as including "trade, profession or occupation." Exhibit A at 1. The Policy specifically addresses whether day care is a business in a "Home Day Care Endorsement." Exhibit A. In relevant part, it states that "[i]f an 'insured' regularly provides home day care services to a person or persons other than 'insureds' and receives monetary or other compensation for such services, that enterprise is a 'business.'" *Id.* The above language is qualified by the provision that "[t]he rendering of home day care services by an 'insured' to a relative of an 'insured' is not considered a 'business.'" *Id.*

---

1. This suit, Aaron Joseph Chastain, minor by his next friends, Jamie L. Chastain, natural mother and custodian, and Jeffrey S. Chastain, natural father, Plaintiff v. Tammy Defendant, is currently pending as Cause No. 47C01–0004–CT–367 before the Circuit Court of Lawrence County, Indiana.

### The Arrangement for Day Care of Aaron

At the time of the accident, Aaron had been receiving day care from Kidd for about seven months. Standard Mutual's Facts at ¶ 21. Aaron was at Kidd's home for this purpose five to six days a week for at least eight hours a day. *Id.* at ¶ 22. Kidd and Aaron are not related to each other. Jamie, Aaron's mother negotiated with Kidd that Kidd would properly care for and appropriately supervise Jamie's four-year-old son Aaron when he was under her care pursuant to their day care agreement. Aaron Chastain's Designation of Evidentiary Matters and Undisputed Material Facts in Support of Summary Judgment ("Chastain's Facts"), ¶ 22. In exchange for providing day care to Aaron, Kidd received monetary compensation through a government program administered by an organization called Hoosier Uplands. Standard Mutual's Facts, ¶ 23. Kidd also babysat for several other children while caring for Aaron. *Id.* at ¶ 24. The compensation that she received for this work was her sole source of income. *Id.*

### Activities on the Day of the Accident

Kidd's yard is next to a pond. Kidd testified that if her grass were long, snakes from the pond would get into her lawn. Deposition of Tammy Kidd ("Kidd Depo.") at 31–32. She further explained that she generally kept her grass mowed so that the children for whom she babysat could play safely in the yard. *Id.* When asked whether she could have waited and mowed the grass when the children were not at her home, Kidd explained that she could have waited a day or two to mow the lawn and noted that she was not aware of any snakes in her yard at the time she decided to mow it. *Id.* at 32. When the accident happened, Kidd was mowing the front lawn and believed that the children were playing in the back yard. *Id.* at 12.

### Standard for Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-moving party. *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 392 (7th Cir.1992). Summary judgment is required only if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### Analysis

The task before the Court is to determine how the contractual language in Kidd's homeowners policy applies to the accident that caused Aaron's injury. Specifically, we must determine whether the injuries Aaron suffered arose "in connection with" a business engaged in by Kidd. Then, we must interpret the language in the second sentence of the business pursuits exclusion. *Gulf Ins. Co. v. Tilley*, 280 F.Supp. 60, 64 (N.D.Ind.1967) ("In order to give meaning to the entire paragraph of exclusion, both parts thereof must be construed together.") (citations omitted). We must answer the question, whether "running into, against and/or over" Aaron with the lawn mower was an "act or omission, regardless of its nature

or circumstance, involving a service or duty rendered, promised, owed or implied to be provided because of the nature of the 'business'" of babysitting.

■■■ Because we are sitting in diversity, the Court is charged with applying the law of Indiana as interpreted by the highest court of the state. *Fidelity and Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P.*, 25 F.3d 484, 486 (7th Cir.1994) (citations omitted). The Supreme Court of Indiana has not yet had the opportunity to examine the exact language of the business pursuits exclusion as contained in Kidd's insurance policy so we shall attempt to determine how the state supreme court would resolve the issue were it to hear the case. *Huntzinger v. Hastings Mut. Ins. Co.*, 143 F.3d 302, 308 (7th Cir.1998) (citations omitted).[2] Two lines of precedent direct our pursuit of this task. First, in *Tilley*, 280 F.Supp. 60, the Northern District of Indiana has applied the language of a predecessor business pursuits exclusion to the day care context. Second, Indiana courts have established a number of guiding principles for interpreting language in insurance contracts. For example, contracts for insurance are subject to the same rules of interpretation as are other contracts. *Eli Lilly and Co. v. The Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind.1985). The goal, when interpreting an insurance contract, is to honor the intent of the parties as manifested in the contractual language. *State Farm Mut. Auto. Ins. Co. v. Spotten*, 610 N.E.2d 299, 300 (Ind.Ct.App.1993) (citations omitted). If the insurance policy language is clear and unambiguous, a court must give the language its plain and ordinary meaning.

*Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992) (citations omitted). An insurance policy is ambiguous only if reasonable persons may honestly differ as to the meaning of the language. *Eli Lilly*, 482 N.E.2d at 470. When a court determines that the language is ambiguous, then the insurance policy should be given the interpretation most favorable to the insured. *Tate*, 587 N.E.2d at 668. This maxim is in keeping with the rule of construction disfavoring the drafter in the face of ambiguous language. *Eli Lilly*, 482 N.E.2d at 470.

■■ In *Tilley*, 280 F.Supp. at 63, the Court assumed, without deciding, that "baby-sitting for compensation, on a scale and frequency as that undertaken by plaintiff's insured, constitutes a 'business pursuit' within the meaning of the policy exclusion." No such assumption is necessary here. In contrast to *Tilley*, the Home Day Care Endorsement added to the standard homeowners insurance policy in the years since *Tilley* clearly states that the day care activities in which Kidd engaged are a "business pursuit" under the Policy. The Home Day Care Endorsement states that providing day care to a non-relative in exchange for monetary compensation is a business under the policy. Exhibit A. Kidd admits she was paid to provide day care to Aaron, and there is no allegation that Aaron and Kidd are related to each other.

The next question asks whether "running into, against and/or over" Aaron with the lawn mower is an accident that occurred "in connection with" the business of providing day care to Aaron. Other courts considering whether an injury-causing act

---

**2.** In the absence of a decision from the Supreme Court of Indiana, decisions of the Indiana Court of Appeals provide "strong indication" of how the state supreme court would likely decide the issue. *General Accident Ins. Co. of America v. Gonzales*, 86 F.3d

673, 675 (7th Cir.1996). Unfortunately, neither the parties' nor the Court's research has revealed any Court of Appeals decisions interpreting the language of the Policy at issue here.

occurred "in connection with" an insured's business activity have interpreted the phrase rather broadly.[3] In *Nationwide Mutual Fire Ins. Co. v. Nunn*, 114 N.C.App. 604, 442 S.E.2d 340, 343 (1994), the Court of Appeals of North Carolina found that a dog bite suffered by the injured party was "connected" to the Nunn's business of running a bed-and-breakfast at their home, such that the injury was not covered by the Nunn's homeowners insurance policy. The court ruled that the injured party would not have been on the Nunn's property (and within range of the dog) if not for the fact that the injured party was a guest at a wedding hosted at the bed-and-breakfast. *Id.* 442 S.E.2d at 344. The court rejected insured's argument that supervising a dog was unrelated to their business of running a bed-and-breakfast in favor of the contention that providing safe accommodations was connected to their business activity. *Id.* at 343.

■ Similar reasoning applies to the situation before the Court. The Chastains argue that "the act of lawn mowing while performing these obligations [of caring for Aaron] was in no way bargained for" and that Kidd's "business" was "caring for and supervising Aaron." Chastain Memo. at 5–6. According to this reasoning, because the proximate cause of the accident arose from Kidd's mowing the lawn, the accident was not connected to Kidd's business of providing day care to Aaron. *Id.* at 6. We are not persuaded by this argument. Just as it was implicit in the Nunn's business to provide safe accommodations to their guests, *Nunn*, 442 S.E.2d at 343, Kidd's business was "caring for and supervising

Aaron," as, in fact, the Chastains so state in their own submissions. Chastain Memo. at 6. Failing to adequately care for and/or supervise Aaron so that he was injured by the lawn mower happened "in connection with" Kidd's business.

■ Much of the Chastain's argument is pinned to the second sentence of the business pursuits exclusion, which states that "[t]his exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the 'business.'" We think there are serious shortcomings in relying on this provision to support Defendants' arguments. The Chastains argue that "Kidd's *act of lawn mowing* did not involve services and duties Kidd owed to Aaron because of the nature of her business, to wit: caring for and supervising Aaron." Chastain Memo. at 6 (emphasis added). At least one other court has rejected this argument as applied to facts very similar to those before us. In *Commerce Ins. Co. v. Finnell*, 41 Mass.App.Ct. 701, 673 N.E.2d 71 (1996), Sean, the child receiving day care services, placed his hand in a bowl of boiling water with which Laureen, his baby-sitter, was preparing cream of wheat for her own lunch. Laureen argued that preparing her own lunch was outside of her business of caring for Sean. *Id.* 673 N.E.2d at 72. The court disagreed, reasoning that Laureen's "business was to care for Sean and prevent him from being harmed" and that she was paid for performing this work continuously during her work day. *Id.* at 72. The court found that

---

**3.** Homeowners insurance policies often include standardized language. It appears that an organization called the Insurance Services Office ("ISO"), in response to developments in the insurance industry, including court decisions, periodically proposes new language that is widely adopted in subsequent policies.

*See* Standard Mutual's Memorandum of Law in Support of Summary Judgment ("Standard Mutual's Memo.") at 4–7. The language of the Policy at issue here was first included in the 1990 version of the ISO's business pursuits exclusion. *Id.* at 7.

"[w]hether the injury was caused by what Laureen did do ... or failed to do ... during her working hours ... is of no importance in view of the fact that the policy's exclusion applies to any 'act or omission' involving a service rendered or promised which arises out of the business of baby-sitting." Likewise, in our case, whether Aaron's injury was caused by Kidd's act of mowing the lawn where Aaron could be injured by the lawn mower or her failure to ensure that Aaron did not come to harm while in her care, Aaron's injury was due to an act or omission involving the service or duty promised and owed of "caring for and supervising Aaron" as bargained for in the child-care agreement between Aaron's mother and Kidd.[4]

The Chastains propose a different interpretation of the second sentence in the exclusion provision. They claim that the phrase "but is not limited to" enlarges the phrase "act or omission" rather than the phrase "involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the 'business.'" Aaron Chastain's Reply Brief in Support of His Motion for Summary Judgment at 3. Thus, the Chastains claim, the exclusion "is limited to situations involving a service or duty rendered, promised, owed, or implied to be provided because of the *nature* of the business." *Id.* at 3 (emphasis in original). Again, the Chastains contend that mowing the lawn

had nothing to do with the "nature" of day care. We must reject this argument as well. The Chastains do not explain the analysis behind their grammatical conclusions, and the basis for their deduction is not readily apparent. Regardless, as discussed above, the act (mowing the lawn where Aaron could get hurt) or the omission (failing to supervise Aaron) resulting in Aaron's injury did involve the service and duty of providing day care.

The interpretation of the second sentence offered by the Chastains turns the sentence into something like the "non-business pursuits" clause of the contract in *Tilley.* The homeowners insurance policy in *Tilley*, 280 F.Supp. at 62, excluded coverage with respect to "any business pursuits of an insured, except ... *activities therein which are ordinarily incident to non-business pursuits.*" (emphasis added). It is clear why the Chastains would want to so interpret the language of Kidd's policy. In *Tilley*, a child was injured at the home of her day-care provider when the child grabbed a pot of hot coffee, spilling it on herself and suffering burns. *Id.* The court found that serving coffee to guests was not an activity that was ordinarily incident to providing day care and was, therefore, covered under the day care provider's homeowners insurance policy. *Id.* at 65. Under the same reasoning, lawn-mowing is not an activity ordinarily incident to caring for children and would be

---

4. Standard Mutual points out that Kidd mowed the lawn to ensure that the children she was babysitting did not encounter snakes from the nearby pond in the yard and that lawn mowing, therefore, was an activity "connected with" Kidd's business. Standard Mutual's Consolidated Memorandum of Law in Opposition to Jamie's Summary Judgment Motion and Reply Brief in Support of Standard Mutual's Summary Judgment Motion ("Standard Mutual's Reply") at 5. This is a creative, but ultimately fallacious, argument. Under this reasoning, if Kidd injured herself

while mowing the lawn at any time of day or night, regardless of whether her charges were in her care, her injuries would not be covered under the policy because lawn-mowing would be "connected with" her business. Lawn-mowing also would be an act "implied to be provided because of the nature of the 'business'" since it would be an act necessary to maintaining a snake-free yard. This interpretation of the language is not a reasonable interpretation as required by case law. *See Eli Lilly*, 482 N.E.2d at 470.

covered. However, the second sentence of Kidd's Policy simply is not a "non-business pursuits" clause like that of *Tilley*. It excludes from coverage any act or omission involving a service or duty related to the policy-holder's business even if that activity is normally undertaken pursuant to one's non-business pursuits. *See also Millers' Mut. Ins. Assoc. of Illinois v. Pennington*, 888 S.W.2d 406, 407 (Mo.Ct. App.1994) (finding that language exactly matching Kidd Policy was not an exception dealing with "non-business pursuits"); *Furgerson v. Cambridge Mut. Fire Ins. Co.*, 237 Ga.App. 637, 516 S.E.2d 350, 352 (1999) (same). So even by interpreting the business pursuits exclusion in its entirety, as urged by the Chastains and as required by *Tilley*, 280 F.Supp. at 64, we cannot reach a conclusion in favor of the Chastain's Motion for Summary Judgment. The language of the Kidd's Policy differs too significantly from that of the policy in *Tilley*.

### Conclusion

For the reasons explained above, Standard Mutual's Motion for Summary Judgment is *GRANTED*, and Chastain's Motion for Summary Judgment is *DENIED*.

It is so ORDERED this day of April 2001.