J-A17015-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| THE FIRST LIBERTY INSURANCE CORPORATION | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MICHAEL COLL AND COLLEEN COLL | |
| v. | |
| JAYDEN ALKER, A MINOR BY HIS PARENTS AND NATURAL GUARDIANS, KEVIN ALKER AND TARA ALKER IN THEIR OWN RIGHT | |
| Appellants | No. 1622 EDA 2014 |

Appeal from the Order Dated April 14, 2014
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): September Term, 2012 No. 003400

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY OTT, J.:                    **FILED AUGUST 07, 2015**

Jayden Alker, a minor by his parents and natural guardians, Kevin Alker and Tara Alker, in their own right (Alkers) appeal the order dated April 14, 2014, in the Court of Common Pleas of Philadelphia County, granting declaratory judgment in favor of the First Liberty Insurance Corporation (First Liberty).[1]  Specifically, the trial court determined the homeowner's insurance policy in question contained a valid and enforceable exclusion regarding Jayden Alker's injuries suffered through the Colls' operation of a

_____

[1] Michael Coll and Colleen Coll are not part of this appeal.

home day care business. The Alkers claim the trial court erred because (1) there was no proof the day care service operated on a profit motive, and (2) the term "Home Daycare Business" was inherently ambiguous. After a thorough review of the submission by the parties, relevant law, and the certified record, we affirm based upon the sound reasoning of the Honorable Alice Beck Dubow in her Pa.R.A.P. 1925(a) opinion, dated January 6, 2015.[2]

Briefly, we note that the Alkers had left their child, Jayden, in the care of Colleen Coll at the Colls' home. The Alkers paid Coll $25.00 per day for this care and on the date of the injury, the arrangement had been in place

_____

[2] Our standard of review for declaratory judgment is well-established:

> Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

***Pocono Summit Realty, LLC v. Ahmad Amer, LLC***, 52 A.3d 261, 265 (Pa. Super. 2012)(citations and quotation marks omitted).

Additionally,

> [w]e will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

***Id.*** (citations and quotation marks omitted).

***Erie Insurance Group v. Catania***, 95 A.3d 320, 322 (Pa. Super. 2014).

for approximately two years.  On October 11, 2010, while under the Colls' care, in the Colls' home, the Colls' dog bit the child on the face, causing physical and emotional injury.  The Alkers filed suit against the Colls who sought defense and indemnification through their homeowner's insurance, issued by First Liberty.

First Liberty filed this declaratory judgment action seeking a declaration of rights and duties pursuant to the exclusion noted above. Specifically, the relevant language of the policy is:

> NO SECTION II – LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS.
> LIMITED SECTION I – PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS
>
> If an "insured" regularly provides home day care services to a person or persons other than "insureds" and receives monetary or other compensation for such services, that enterprise is a "business."  Mutual exchange of home day care services, however, is not considered compensation.  The rendering of home day care services by an "insured" to a relative of an "insured" is not considered a "business."
>
> Therefore, with respect to a home day care enterprise which is considered to be a "business," this policy:
>
> 1. Does not provide Section II – Liability Coverages because a "business" of an "insured" is excluded under exclusion 1.b. of Section II – Exclusions[.]

*See* First Liberty Policy, Endorsement HO 04 96 04 91.

The relevant language of exclusion 1.b. is as follows:

> 1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to "bodily injury" or "property damage":

. . . .

>    b. Arising out of or in connection with a "business" engaged in by an "insured." This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business[.]"

*Id*., Endorsement HO 00 03 04 91, Section II, 1.b., at 12 of 18.

The trial court has provided a proper analysis regarding the Alkers' first contention regarding the application of the "profit motive" as a defining factor for the application of a business exclusion. **See** Trial Court Opinion, 1/6/2015, at 3-5, 6-8.

Regarding the Alkers' second issue; although the trial court opinion does not specifically address the nature of a home day care business, it is nonetheless clear reading the entire decision that the trial court determined the child care services Coll provided fit the description. Our review of the certified record finds no error therein.

Throughout the 1925(a) opinion, the trial court refers to the regularly provided, paid, services supplied by Coll as babysitting the child. We believe that this alone fairly encompasses home day care services. However, the certified record provides a more complete description of those services. The record demonstrates that Coll cared for the child on a regular basis in her home. She was paid for the service. **See** Answers to Interrogatories, 5/28/2013, at 4-7. She admitted she provided paid babysitting services to both the Alkers and the child of another couple. **Id**. at 9. She had no

restrictions on how she cared for the children, including the ability to take them on daytrips, such as to the park.  *Id*. at 8; N.T., Deposition of Colleen Coll, 6/21/2013, at 16.   She provided food, shelter and attention to the children.  Answers to Interrogatories, 5/28/2013, at 8; N.T. Deposition Coll, 6/21/2013, at 26.   She provided medicine, as needed, to the Alkers' child.  N.T. Deposition Coll, 6/21/2013, at 25.   All of these facts support the determination that Coll provided home day care services to the Alkers.[3]

Order affirmed.  Parties are directed to attach a copy of the trial court opinion in the event of further proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/2015

---

[3] Alkers opine, in part, that because the Coll situation does not meet the statutory definition of "Family child day care home," *see* 55 Pa.C.S. § 3209.4, Coll did not provide home day care services.  This fact only demonstrates Coll did not provide licensed day care services.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | |
|---|---|
| THE FIRST LIBERTY INSURANCE CORPORATION | SUPERIOR COURT 1622 EDA 2014 |
| *Plaintiff* | |
| v. | SEPTEMBER TERM, 2012 No. 3400 |
| MICHAEL COLL, COLLEEN COLL | |
| and | |
| J.A., a minor by his parents and natural guardians, KEVIN ALKER and TARA ALKER in their own right | |
| *Defendants.* | |

**OPINION**

The First Liberty Insurance Corporation Vs C-OPFLO



12090340000071

## I.  PROCEDURAL HISTORY AND FACTS

This appeal arises from a Declaratory Judgment Action that The First Liberty Insurance Corporation, a homeowner insurance carrier, filed in order to determine whether the insurance carrier must provide coverage for an incident that occurred in the insured's home while the insured was providing home daycare services. Since the insurance policy unambiguously excludes coverage for incidents occurring while the insured is providing home daycare services, the trial court ordered that the insurance company was not required to provide coverage and indemnify the insured.

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b)  D. SPARACINO' 01/08/2015

In particular, on October 11, 2010, Colleen Coll was providing daycare services for J.A. in her home and Ms. Coll's dog bit J.A. on the cheek. J.A. sustained physical and emotional injuries as a result of the dog bite. At the time, Ms. Coll had a homeowner's insurance policy with The First Liberty Insurance Company.

On September 28, 2012, The First Liberty Insurance Company filed a Declaratory Judgment Action against Michael and Colleen Coll as well as J.A. and his parents to determine whether The First Liberty Insurance Company had to provide insurance coverage for the claim arising out of the dog bite.

The parties stipulated to the above-referenced facts of the case at the bench trial on March 15, 2014 and the parties agreed to introduce into evidence Plaintiff's Exhibits 1 through 10. (N.T. 3/14/14 p. 5-6).

On March 31, 2014, the trial court ordered that The First Liberty Insurance Company was not obligated to defend further and indemnify its insureds', Michael Coll and Colleen Coll, in the action that J.A.'s parents filed against the Colls. (Order, 3/31/14).

On April 9, 2014, J.A. a minor by his parents and natural guardians, Kevin Alker and Tara Alker ("Alker Appellants") filed a Motion for Post-Trial Relief requesting that the trial court reconsider its March 31, 2014 Order. (See Alker Defendants' Motion for Post Trial Relief, 4/9/14). On April 14, 2014, the trial court denied the Alker Appellants' Motion for Post Trial relief. (Order, 4/14/14.) On May 9, 2014, the Alker Appellants filed a Notice of Appeal. (See Docket).

2

## II.    STATEMENT OF FACTS

The undisputed and relevant facts in this case are as follows.

### A. Facts Surrounding the Homeowners' Insurance Policy

The First Liberty Insurance Corporation issued a Liberty Guard Deluxe Homeowners Insurance Policy ("the policy") to Michael and Colleen Coll with effective dates December 13, 2009 through December 13, 2010. designated as policy number H36-288-319145-409 5. (Plaintiff's Exhibit 1). The policy was valid and in effect at the time of the incident that is the subject of this Declaratory Judgment Action. Id.

The policy does not provide coverage for incidents arising from any business in which the insured engages. The specific language of the policy provides that the policy does not provide coverage for bodily injury or property damage "arising out of or in connection with a 'business engaged' in by an 'insured.'" Id. at Section II – Exclusions 1(b) (emphasis added). The policy details this exclusion by providing that the policy does not cover "an act or omission regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the 'business.'" Id. (emphasis added).

The policy defines "business" as including a "trade, profession, or occupation." Id. at Definitions.

The policy also contains an endorsement that addresses "home daycare business" and precludes coverage for home day care activities that the insured regularly provides for compensation. In particular, the policy does not provide liability coverage for a home daycare business in a situation in which an "insured regularly provides home day care services to a

3

person or persons other than the insureds and <u>receives monetary or other compensation for such services.</u>" <u>Id</u>. at Endorsement. Section II (emphasis added).

## B. Facts Surrounding the Home Daycare Services

At the time of the incident Colleen Coll had been babysitting for J.A. for more than two years in Ms. Coll's home. (Plaintiff's Exhibit 6 at ¶5-7; Plaintiff's Exhibit 8 at p. 13-15). The mother of J.A. paid Ms. Coll $25/day to babysit for J.A. from 8:00 A.M. to 5:00 P.M. during the school year. (Plaintiff's Exhibit 6 at ¶5-7; Plaintiff's Exhibit 8 at p. 13-15; 26).

Before babysitting for J.A. in her home, Ms. Coll babysat for another child five days a week for one and a half to two years. The parents of that child also paid Ms. Coll $25/day. (Plaintiff's Exhibit 6 at ¶9; Plaintiff's Exhibit 8 at p. 10).

On the day of the incident, Ms. Coll was also providing home daycare services for her nephew and a child of a family friend.[1] (Plaintiff's Exhibit 6 at ¶8).

Ms. Coll's friend referred the mother of J.A. to Ms. Coll to babysit for J.A. (Plaintiff's Exhibit 9 at p. 8). Consequently, Ms. Coll and the mother of J.A. only knew each other through the babysitting arrangement and did not socialize "outside of the babysitting." <u>Id</u>. at p. 22.

At the time of the incident, Ms. Coll owned a pit bull/lab mix, who was nine months old and lived in the house with her. (Plaintiff's Exhibit 8 at p.17, 22). The dog bit J.A. on his cheek and J.A. sustained ongoing physical and psychological injuries as a result of the dog bite. (Plaintiff's Exhibit 9 at p. 34).

---

[1] Although Ms. Coll provided home daycare services to her nephew and a family friend without charging their parents, that does not override the fact that Ms. Coll charged the parents of J.A. and another child $25/day to provide home daycare services.

III. STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

The Appellants raise the following issues on Appeal:

1. "This Court erred by denying the Alker Defendants'/Appellants' Motion for reconsideration;"

2. "This Court erred by finding as a matter of fact that Ms. Coll provided 'home day care services' to [J.A.];"

3. "This Court erred by holding that Ms. Coll's activity fell within the business pursuits exclusion of the applicable policy;"

4. "This Court erred by holding that the 'continuity' prong of the business pursuits exception had been satisfied by Ms. Coll's actions;"

5. "This Court erred by holding that the 'profit motive' prong of the business pursuits exception had been satisfied by Ms. Coll's actions;"

6. "This Court erred by not holding that the business exclusion and home day care exclusion are against public policy;"

7. "The Court erred by holding that [J.A.]'s injuries 'arose out of and in connection with Ms. Coll's daycare business' because [J.A.]'s injuries in fact arose out of and were in connection to the negligent supervision of a dog that had nothing to do with the alleged 'home daycare business.'"

## IV.    LEGAL DISCUSSION

### A. The Trial Court Properly Interpreted the Unambiguous Language of the Homeowner's Insurance Policy.

The trial court properly entered declaratory judgment and ordered that The First Liberty Insurance Company was not obligated to defend further or indemnify Michael and Colleen Coll because Ms. Coll was consistently providing home daycare services in her home for compensation and thus, the Business Pursuit Exclusion from her policy applied.

The Pennsylvania Supreme Court has held that when the language of an insurance contract is clear and unambiguous, the trial court must give effect to the language:

> The principles governing our interpretation of a contract of insurance are familiar and well settled. The task of interpreting a contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

Standard Venetian Blind Co. v. Am. Empire Ins. Co., 503 Pa. 300, 304-05, 469 A.2d 563, 566 (1983) (internal citations and quotations omitted; emphasis added).

The courts, in interpreting insurance policies, have examined "business pursuit exclusions" and considered two factors when determining whether an insured's activities are a "business." The courts first consider the continuity of services that the insured has provided and second, whether the insured provided such services with a profit motive. The courts have defined "profit motive" as a means of livelihood, a means of earning a living, procuring subsistence or

profit, commercial transactions or engagements. Sun Alliance Ins. Co. v. Soto, 836 F.2d 834, 836 (3d Cir. 1987).

In the context of providing home daycare services, the courts have held that the "profit motive" prong is met when an insured is motivated to babysit by a desire for compensation rather than emotional ties. Travelers Indem. Co. v. Fantozzi By & Through Fantozzi, 825 F. Supp. 80, 85 (E.D. Pa. 1993).

In this case, the literal words of the insurance policy address coverage when an insured provides home daycare services and precludes coverage for home daycare services when the insured 1) regularly provides home day care services to a person or persons other than the insured; and 2) receives monetary or other compensation for such services. (Plaintiff's Exhibit 1).

The undisputed facts in this case demonstrate that the exclusion for home daycare services applies. For over two years, Ms. Coll babysat for J.A. in her home three to four days a week during the school year for the entire day and received compensation. (Plaintiff's Exhibit 6 at ¶5-7; Plaintiff's Exhibit 8 at p.13-15, 26). Ms. Coll, prior to providing home day care services to J.A., provided similar services to another child five days a week for the entire day for one and a half to two years and was paid for such services. (Plaintiff's Exhibit 6 at ¶9; Plaintiff's Exhibit 8 at p. 10). Therefore, Ms. Coll consistently and regularly provided home daycare services not only to J.A. but also to another child.

Additionally, the parents of J.A. and the other child paid Ms. Coll for these home day care services, specifically at a rate of $25.00 per day. (Plaintiff's Exhibit 6 at ¶5-7, ¶9;

7

Plaintiff's Exhibit 8 at p. 10, 13-15, 26). Thus, Ms.Coll received compensation in exchange for providing home daycare services.

Additionally, when applying these facts to the courts' interpretation of "business pursuit" exclusions in insurance policies, the result is the same. Ms. Coll provided home daycare services consistently, was paid for those services, and charged only individuals who were not relatives or close family friends. (Plaintiff's Exhibit 6 at ¶5-9). . Therefore, Ms. Coll was being compensated for services and engaged in a "business pursuit."

Therefore, the trial court properly entered declaratory judgment in favor of The First Liberty Insurance Company.

## B. The Trial Court Properly Found That J.A.'s Injuries Arose Out of and in Connection With the Home Daycare Business.

The Alker Appellants argue that the business exclusion of the homeowner's policy only applies to injuries "arising out of or in connection with a business." (Plaintiff's Exhibit 1 at Section II – Exclusions 1(b)). The Alker Appellants conclude that since J.A.'s injuries arose out of the negligent supervision of a dog and not out of the operation of a home daycare center, the exclusion does not apply. (Statement of Errors at ¶7). This is incorrect.

Pennsylvania courts have determined that the term "arising out of" is unambiguous and indicates a "but for" or "cause and result" relationship between the alleged injuries and the business activities of the insured. Madison Construction Co. v. Harleysville Mutual Insurance Co., 735 A.2d 100 (Pa. 1999) (citing McCabe v. Old Republic Insurance Co., 425 Pa. 221, 228 A.2d. 901, 903 (Pa. 1967)).

8

In this case, J.A.'s injuries would not have occurred "but for" the fact that Ms. Coll was providing babysitting services to him. J.A. was in Ms. Coll's home on the day the dog bit him because Ms. Coll was babysitting for him. Consequently, the dog would not have bitten J.A. "but for" Ms. Coll's babysitting for J.A.

Therefore, the trial court properly determined that J.A.'s injuries arose out of and in connection with Ms. Coll's daycare business.

## C. The Trial Court's Decision Was Not Against Public Policy

The Pennsylvania Supreme Court is hesitant to permit courts to declare contracts contrary to public policy:

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy."

Hall v. Amica Mutual Insurance Co., 538 Pa. 337, 347-48, 648 A.2d 755, 760 (1994) (quoting Muschany v. United States, 324 U.S. 49, 66-67, 65 S.Ct. 442, 451, 89 L.Ed. 744, 756 (1945) (footnotes and citations omitted).

Further, "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring...Only in the clearest cases, therefore, may a court make an alleged public policy the basis of judicial decision." Hall at 347-348 (quoting Mamlin v. Genoe, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941)).

Here, the Alker Appellants claim that "this Court erred by not holding that the business exclusion and home day care exclusion are against public policy." (Statement of Errors at ¶6). The Alker Appellants, however, fail to articulate which "public policy" that the trial court is allegedly violating by enforcing the terms of the homeowner's policy. Without a clearer argument, the trial court cannot evaluate whether the provision violates public policy and the Alker Appellants have waived this argument.

### D. The Trial Court Properly Denied the Motion for Reconsideration

The Superior Court has made it clear that "the standard of review of a motion for reconsideration is limited to whether the trial court manifestly abused its discretion or committed an error of law." Dahl v. AmeriQuest Mortgage Co., 2008 PA Super 142, 954 A.2d 588, 593 (Pa. Super. Ct. 2008) citing Koresko & Associates, P.C. v. Farley, 826 A.2d 6, 7 (Pa.Super.2003).

Further, an abuse of discretion "is not merely an error of judgment." *Drelles v. Manufacturers Life Ins. Co.*, 2005 PA Super 249, 881 A.2d 822, 830 (Pa. Super. Ct. 2005) citing In re Deed of Trust of Rose Hill Cemetery Association, 527 Pa. 211, 216, 590 A.2d 1, 3 (1991). Rather, the standard for abuse of discretion is, "if, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused. Id. at 830-831,

For the reasons above, the trial court did not abuse its discretion or commit an error of law. Therefore, the trial court properly denied the Alker Appellants' Motion for Reconsideration.

10

## V.    CONCLUSION

The trial court properly entered Declaratory Judgment and the Superior Court should uphold its decision.

BY THE COURT:

_____
ALICE BECK DUBOW, JUDGE

Dated:  __1-6-15__